THE STATE ex rel. SKRAINKA CONSTRUCTION COMPANY v. MAXIME REBER, President of Board of Public Improvements, and BENJAMIN J. TAUSSIG, Comptroller, of St. Louis.

In Banc, March 7, 1910.

1. **OFFICER: Ministerial Duty: Delegation.** The ministerial duty or clerical work of an administrative officer may be delegated to a clerk or assistant with proper care.

2. ————: ————: ————: **Discretion: Special Taxbill.** The signing of a special taxbill, legally issued by the city in payment for a public improvement, does not require the personal discretion or judgment of the president of the board of public improvements, or of the comptroller, but is a mere ministerial duty; and, therefore, being authorized by an ordinance to do so under proper precautions, the president may designate a clerk or assistant to sign his name to such special taxbills, and the comptroller may likewise designate a clerk or assistant to countersign them in his name, and such signing is as valid as if the officers had themselves attached their signatures.

3. CHARTER PROVISIONS: Delegation of Powers By Officer: Assistant. Sections of the city charter empowering the municipal assembly to transfer the duties of one officer, in whole or in part, to another, mean from one city officer to another city officer, and not from one such officer to his clerk or assistant, his mere appointee, for such clerk or assistant is not a city officer. But under a charter provision requiring the officer to authenticate special taxbills, the council may properly enact an ordinance which designates the precautions under which such officer's purely ministerial duty, such as the signing of his name to the taxbills, may be done by a clerk or assistant.

Mandamus.

WRIT DENIED.

*Hickman P. Rodgers* for relator.

The relator in this case stands on a literal interpretation of the charter of the city of St. Louis. Assessments for cost of local improvements are proceedings *in invitum* and, unless regular, special taxbills based thereon are invalid. The contractor in this case, having faithfully performed its part of the contract with the city, is entitled to valid taxbills—bills above suspicion. On the face of the charter it appears that special taxbills must be "certified" and "authenticated" by the president of the board of public improvements and "countersigned" by the comptroller, but whether the charter may be so construed as to permit the officers named to delegate these acts of official duty to assistants is a question that has never before been presented to this court. That a public official cannot delegate to an assistant the exercise of a discretionary duty is too clearly settled to require argument or authority; and that the municipal assembly cannot by its ordinance amend the charter of the city is equally clear. Therefore, unless this court holds said acts of certifying, authenticating and countersigning to be of mere ministerial character, or unless the common-law rule with regard to vicarious signatures is broad

enough to control the present case, then it is the duty of respondents to sign said special taxbills with their own hands, and the alternative writ should be made peremptory.

*L. E. Walther* and *B. H. Charles* for respondents.

(1) Ministerial duties may be delegated. Mechem on Pub. Offices and Officers, sec. 568; Grady v. Insurance Co., 60 Mo. 123; Neiner v. Altemeyer, 68 Mo. App. 246; Heman v. Loevy, 179 Mo. 455. (2) (a) A ministerial act as applied to a public official is defined to be an act or thing which he is required to perform by direction of legal authority, upon a given state of facts, independent of what he may think of the propriety or impropriety of doing the act in the particular case. State ex rel. v. Cook, 174 Mo. 118; Flournoy v. Jeffersonville, 79 Am. Dec. 468; Ray v. City, 90 Ind. 572; Porter v. Paving Co., 214 Mo. 1; Heman Con. Co. v. Loevy, 179 Mo. 455. (b) Mandamus will lie to compel an officer to perform a specific ministerial duty, but not to control discretionary acts. 26 Cyc., p. 337, and cases above cited. (c) The act of the president of the board of public improvements in signing, and of the comptroller in countersigning, special taxbills, is ministerial. (d) It may be compelled by mandamus. State ex rel. v. Paving Co., 183 Mo. 230; State ex rel. v. City, 211 Mo. 591. (3) A person's name signed by another person with his authority is his signature. 25 Am. and Eng. Ency. Law, p. 1066; Porter v. Paving Co., 214 Mo. 1; Grady v. Insurance Co., 60 Mo. 123; Hanson v. Rowe, 26 N. H. 327; Richardson v. Bachelder, 19 Me. 82; Achorn v. Matthews, 38 Me. 173; Kidder v. Prescott, 24 N. H. 267; Vines v. Clingsfost, 21 Ark. 309; Streff v. Colteaux, 64 Ill. App. 179; Hotchkiss v. Cutting, 14 Minn. 537; Lewis v. Holley, 22 L. R. A. 297; Ellis v. Francis, 9 Ga. 327. (4) A special taxbill certified by the president of the board

of public improvements and countersigned by the comp-
troller, is only prima-facie evidence of the execution
of the work, the correctness of the rates and prices
and amount of work and material, and of the liability
of the person named therein as owner of the land
charged with such bill to pay the same. It is not con-
clusive. Art. 6, sec. 25, Charter of St. Louis; Gallagher
v. Bartlett, 64 Mo. App. 258; Hill v. Hutchinson, 100
Mo. App. 294; Heman v. Franklin, 99 Mo. App. 346;
Farrell v. Rammelskamp, 64 Mo. App. 425. (5) The
municipal assembly has the power to define the duties
of all city officers, and to transfer and distribute the
powers and duties in whole or in part, of any office pro-
vided for in the charter, to another or others. Charter,
art. 3, sec. 32; art. 4, secs. 28 and 45.

VALLIANT, C. J.—This is an application for a
writ of mandamus to require the president of the board
of public improvements and the comptroller of the
city of St. Louis to sign, with their own hands, cer-
tain special taxbills issued to relator in payment of
work done by him, under contract, in the street depart-
ment of the city. The cause is before us on the peti-
tion of the relator, the return of the respondents, and
a motion by relator for judgment on the pleadings.

The facts shown by the pleadings are as follows:

In 1908 the relator entered into a contract with the
city to pave an alley, or part of one, according to
specifications; he duly performed his contract and was
entitled to receive special taxbills in payment for the
work; these taxbills were made out in due form by
the proper officers and tendered to relator, but he de-
clined to receive them for the reason that the president
of the board of public improvements did not, with his
own hand, sign them, nor did the comptroller, with
his own hand, countersign them, as by the terms of the
city charter, as relator construes it, they were required
to do, but their names were signed by an assistant

appointed by each to perform that duty, as certain ordinances of the city authorized.

The return sets forth at length and in detail the duties of the president of the board of public improvements, as prescribed by the charter, many of which are of a character that require the exercise of a high degree of discretion and good judgment and others are of a ministerial character, and it is shown that in the performance of the duties demanding the exercise of discretion and judgment practically all the time of the officer is consumed, and it is physically impossible for him to do with his own hand all the work of the kind that relator seeks to have him do without neglecting the more important duties that none but he can do. And so it is, though perhaps not to so great a degree, with the comptroller. These facts are admitted.

In order to meet the situation the municipal assembly passed an ordinance No. 24526 entitled, "An ordinance authorizing the President of the Board of Public Improvements to designate an assistant, clerk or other subordinate to execute vouchers, requisitions and special taxbills for such president and providing for the deposit of such designation and a copy of the signature of such assistant, clerk or subordinate with the Register." The ordinance requires as a precaution, for the identification of the signature, that the person designated shall write the signature of the president of the board of public improvements on the same sheet that contains the appointment and that it be filed with the register, and when that is done he is authorized to sign for the president special taxbills and other specified documents. A like ordinance, No. 24527, was passed in reference to the comptroller. Acting under those ordinances the officers named appointed each an assistant or clerk to perform that duty and it was by such so performed in this case.

Work of the kind performed by the relator was, by the terms of the charter, "charged upon the adjoining property as a special tax and collected and paid as hereinafter provided." [Sec. 18, art. 6.] The president of the board of public improvements "shall authenticate all special taxbills against property-owners chargeable with special taxes for work performed or materials furnished under ordinances of the city, which said bills shall be made out and certified to him by the head of the department under which said work is done or material furnished." [Sec. 41, art. 4.] The usual mode of proceeding to accomplish the paving of a street or alley is for the board of public improvements in regular session to consider the question of the desirability and expediency of making the improvement and if they decide to have the work done they have an estimate made of the cost and they prepare an ordinance to be submitted to the municipal assembly authorizing it, and submit at the same time the estimated cost; if the ordinance is passed a contract is let and the execution of the work is turned over to the street commissioner; if the work is accomplished according to the contract the street commissioner makes, or causes to be made under his eye, calculations of the share of the cost of the work chargeable to each lot or piece of property and special taxbills so showing; these taxbills the street commissioner delivers to the president of the board of public improvements for his signature, and when signed the president delivers them to the comptroller for his countersigning and when countersigned the comptroller delivers them to the contractor.

As has been said already the duties of the president of the board of public improvements are of two kinds, the one is such as requires the exercise of discretion and judgment, involving often scientific and technical knowledge, the other requires the performance of mere ministerial or clerical work. The duties

first mentioned cannot be delegated, those of the ministerial kind may be delegated with proper care.

Respondents in their brief refer to section 32, article 3, of the charter, which authorizes the municipal assembly to transfer the duties of one officer in whole or in part to another, and also to section 45, article 4, which empowers the municipal assembly to create other offices, but neither of those sections applies to the facts of this case. The section which empowers the assembly to transfer the duties in whole or in part from one officer to another, means from one city officer to another city officer, but the assistant whom the president of the board of public improvements is authorized by ordinance 24526 to appoint is not a city officer, neither is the assistant appointed by the comptroller, nor does either of those ordinances create a new office as contemplated in section 45, article 4; the appointee is a mere clerk or assistant to the officer appointing him. Therefore if the duty of signing these special taxbills is one that requires the exercise of his personal discretion or judgment by the officer, the ordinances above mentioned are not sufficient to render the signatures by the assistants valid; an ordinance cannot override a charter provision. But it is impossible to conceive an important city office, crowded with a multitude of affairs from year's end to year's end, without being incumbered with a large quantity of work that is purely ministerial or clerical in its character, and such work must of necessity be performed by mere employees. When special taxbills are made out by the street commissioner and by him delivered to the president of the board it is his duty to authenticate them and deliver them to the comptroller.

There are two sections of the charter that seem to be inconsistent with each other. Section 41, article 4, defining the duties of the president says: "He shall authenticate all special taxbills against property-owners chargeable with special taxes for work per-

formed or materials furnished under ordinances of the city, which said bills shall be made out and certified to him by the head of the department under which said work is done or material furnished.'' Section 24, article 6, says: ''All special taxbills for work contemplated by this charter shall be made out by the president of said board and by him registered in his office in full, and certified and delivered to the comptroller,'' etc. The city counsellor in his brief, calling attention to this apparent inconsistency, accounts for it by suggesting that the president of the board having general supervision over all the departments, the act of the head of any department may be considered his act, therefore, the special taxbills made out by the head of one of the departments under his supervision may be considered as made out by him. The most that can be said for that suggestion is that it is the only one that can be given by way of explanation or by which the two sections can be harmonized. But it is conceded by the pleadings in this case that the course of procedure is for the street commissioner to make out the special taxbills for street improvements and deliver them to the president. And when we look at the further conceded fact that even the signing of the many thousands of special taxbills is such a task that it cannot be performed by the officer himself without the neglect of more important duties, we can imagine what the greater difficulty would be if the officer had not merely to sign the bills, but had first to make the calculation of the proportion of the whole costs of the work that was chargeable on each lot or piece of property and then with his own hand make out the bills. Relator is not here complaining that the president did not make out the taxbills, but only that he did not sign them. The requirement of section 41, article 4, is that, ''He shall authenticate all special taxbills.'' If that should be construed to mean that he must go over the calculations made by the street

commissioner to see that the apportionment to each lot of the total cost is correct, and that that must be done in person, the task would be as great and as enduring as if he had made the calculations himself in the first instance. The authentication required by that section of the charter is the certification, evidenced by his signature, that the taxbills are those that came to him through the regular official channel. It is doubtless his duty under the ordinance to receive personally from the street department the taxbills and himself deliver them to his assistant to be signed and himself deliver them to the comptroller and take his receipt. But all that is ministerial work, not work of unimportance, not work to be carelessly done, but still not work that requires the exercise of discretion and judgment. The discretion that the president of the board of public improvements has in reference to the subject is exercised when he counsels with the other members of the board in their meeting on the subject of the then contemplated street improvement, when he draws or assists in drawing the ordinance, when he assists in awarding the contract, etc., but after the contract is let and the work is done and the street commissioner has found that it is done according to the contract and makes out the taxbills and delivers them to the president, the latter has then no discretion, but it is his simple duty to authenticate them by his signature and deliver them to the comptroller. An officer to whom a discretion is entrusted by law cannot delegate to another the exercise of that discretion, but after he has himself exercised the discretion he may, under proper conditions, delegate to another the performance of a ministerial act to evidence the result of his own exercise of the discretion. The clerk cannot pronounce judgment, but he may under direction of the judge make the record evidence of it. In Porter v. Paving Co., 214 Mo. 1, it was held that the signature of the mayor, which the law required to be subscribed to an

ordinance to show that it was approved by him, might under the mayor's direction be written by his secretary. We do not mean to say that an officer to whom the performance of even ministerial work is personally entrusted may, under all circumstances, delegate to another the performance of that duty, but we are aiming to draw the distinction in that particular between an official act requiring the exercise of personal discretion or judgment and a mere ministerial act which requires the exercise of no discretion, and to say that whilst the one cannot be delegated the other under certain circumstances may be.

In the case before us we hold that the acts of signing the names of the president of the board of public improvements and the comptroller are ministerial acts and may under proper conditions be delegated, and we hold that the circumstances of this case render it proper that these officers, with the approval of the municipal assembly, shown by the ordinances in question, should delegate the authority to sign their names as has been done to these special taxbills, and 'we hold that ordinances 24526 and 24527 are valid, and that the bills so signed are as valid as if they had been signed by the president of the board of public improvements by his own hand and countersigned by the comptroller with his own hand.

The writ of mandamus is therefore denied. All concur.