THE STATE ex rel. WILLIAM F. BUDER v. GEORGE E. HACKMANN, State Auditor.

In Banc, October 9, 1924.

1. **INCOME TAX: Clerk Hire.** Assessors are not entitled to receive compensation for clerk hire in making and receiving income tax returns. The salary or compensation of clerks is to be paid out of the fees received by the assessor.

2. ————: ————: **Payable by State: Necessary Expenses Incurred: Statutes.** Section 13124, Revised Statutes 1919, provides that assessors, for their services rendered in connection with income tax assessments, "shall be compensated in like manner and in like amounts as for the assessment of other taxes" and that, in counties in which assessors are paid a fixed salary, in addition to the salary paid, "they shall be permitted to charge for work performed in assessing the income tax the same fees as are charged by assessors whose salary is not fixed by law," to be paid by the State; Section 13116 provides that the assessor "and his deputies shall be entitled to receive their actual necessary expenses incurred in the performance of their duties," which, in a county in which the assessor receives a fixed salary, shall be paid by the State; Section 12816, as amended in 1921, Laws 1921, page 671, fixes the compensation for the assessment of other taxes, and declares that it shall be in lieu of salary, except where a salary is provided by law, in which case the salary is to be in lieu of fees; and Section 12762 provides that the assessor may appoint as many assessors as he needs, "to be paid out of the fees allowed to such assessor." *Held,* that all these sections when read together do not require the State to pay for the hire of clerks for services rendered in connection with the receiving and making up of income tax returns, in

State ex rel. Buder v. Hackmann.

a county in which the assessor is paid a salary. The words "he and his deputies shall be entitled to receive their actual necessary expenses incurred in the performance of their duties," found in Section 13116, do not refer to or include compensation of deputies or clerks or salaries of any kind, but the meaning of the statutes is that the assessor must pay the salaries of all necessary deputies and clerks out of the fees allowed him for taking and receiving income tax returns.

3. ———: ———: ———: **Expenses.** Sections 13116 and 13124, Revised Statutes 1919, mean that the assessor, in addition to the fees allowed him by law for services rendered in connection with the taking and receiving of income tax returns, is entitled to have furnished to him, without deduction from such fees, all his necessary printing, stationery, postage and office equipment, and to be re-imbursed by the State for all outlays made by him or his deputies as necessary expenses in the performance of their duties; but for the doing of such work he and they are to be paid out of the fees allowed him by law.

4. ———: ———: ———: **Mandamus.** Before the State can be held liable for the payment of a fee or expense incurred in its behalf, the person or officer claiming such fee or re-imbursement for such expense must be able to point out the law authorizing such payment; and mandamus to compel such payment will not lie unless the party asking such payment has established his clear legal right thereto.

5. ———: ———: ———: ———: **Hardship.** The argument that an officer should not be compelled to incur a financial loss in performing the duties incident to his office cannot be considered by the courts in determining his right to compensation. The failure of the statute to provide a salary or a fee for a duty imposed upon an officer by law does not excuse his non-performance of the duty; and although the assessor may actually sustain a financial loss in the performance of his statutory duties relating to taking and receiving income tax returns, unless he can compel the State to re-imburse him for amounts paid to necessary deputies for the performance of those duties, such hardship is a matter for the consideration of the General Assembly, and not for the courts.

6. ———: **Income Assessment Book.** The blank "Income Assessment Book" provided for by Section 13117, Revised Statutes 1919, should be furnished by the State. But there is no statutory authority for compensating the assessor for copying into such book the list of names furnished him by the State Auditor, or any other person, as the names of persons liable to pay an income tax.

7. ———: **Fees for Receiving Non-Taxable Returns.** The statute contemplates that only persons having a taxable income shall make re-

State ex rel. Buder v. Hackmann.

turns, and "taxable income" means income which may be taxed after all exemptions and deductions have been allowed from the total income, and for receiving "taxable income" returns the assessor is entitled to be compensated "in like manner and in like amounts as for the assessment of other taxes," which in counties of over 45,000 inhabitants is twenty cents per list for all lists in excess of 3,000; but he is not entitled to compensation for taking and receiving returns from corporations and individuals who do not report any taxable income and on whose income no income taxes are assessable.

8. ———: ———: Safekeeping of Returns. The assessor is not entitled to a fee for filing and keeping returns showing no taxable income, but he is entitled to a fee for filing and safekeeping all other returns.

9. ———: Compensation by Mistake Paid by State: Recoupment: Mandamus. In a mandamus suit brought by an assessor to compel the State Auditor to pay him certain fees for services rendered in connection with receiving and filing income tax returns, the State Auditor is entitled in his return to claim recoupment for fees previously paid the assessor under a mistaken view of the law, such as clerk hire, and if the amount thus erroneously paid the assessor in previous years exceeds the amount of other fees he is now entitled under the statutes to receive from the State, the writ will be denied.

Headnotes 1 to 3 and 6 to 8: Taxation, 37 Cyc. 981. Headnote 4: Mandamus, 26 Cyc. 151, 238; Officers, 29 Cyc. 1423; States, 36 Cyc. 863. Headnote 5: Officers. 29 Cyc. 1423; Taxation, 37 Cyc. 981. Headnote 9: Payment, 30 Cyc. 1315; Taxation, 37 Cyc. 981.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*Buder & Buder* for relator.

(1) Section 13124 provides for the compensation of the assessor in the performance of his duties under the income tax law, as charged in the statement set out in the petition. (2) Section 13116 provides for reimbursing the assessor for his outlays and expenses incurred in the performance of his duties under the income tax law as distinguished from compensation provided for in Section 13124. (3) It is customary to allow officers expenses incurred by them for fuel, clerk

hire, stationery, lights, janitor service and other office accessories. 23 Am. & Eng. Ency. Law (2 Ed.) 388; Ewing v. Vernon County, 216 Mo. 681; Harkreader v. Vernon County, 216 Mo. 696.

*Jesse W. Barrett*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1) The assessor is not entitled to any compensation other than that expressly given and allowed by law. Williams v. Chariton Co., 85 Mo. 646; State ex rel. v. Seibert, 130 Mo. 217; State ex rel. v. Brown, 146 Mo. 406; Jackson Co. v. Stone, 168 Mo. 581; Sanderson v. Pike Co., 195 Mo. 605; State ex rel. v. Wilder, 197 Mo. 32; State ex rel. v. McCracken, 60 Mo. App. 656. (2) The doctrine that money paid under a mistake of law cannot be recovered back has no application to funds paid by one officer to another. State ex rel. v. Scott, 270 Mo. 153; Lamar Township v. City of Lamar, 261 Mo. 183; Morrow v. Surber, 97 Mo. 161. (a) The State Auditor is an agent of the State and all who deal with him must take notice of the extent of the authority conferred on him by law. State ex rel. v. Hays, 52 Mo. 580; Whiteside v. United States, 93 U. S. 257. (b) A public officer, thinking he had authority of law to make payments, but was mistaken, such payments so made may be recovered upon the ground that such officer being an agent of the State has no authority to bind the State beyond his authority under the law. United States v. Bartlett, 24 Fed. 1024; United States v. City Bank, 25 Fed. 429. (c) Salary of officers in arrears may be withheld. Hunter v. United States, 30 U. S. 187. (d) Recoupment is defined to be "the keeping back of something that is due, because there is an equitable reason to withhold it." "Recoupment springs out of the contract or transaction between the parties." 34 Cyc. 623; Wheat v. Dotson, 12 Ark. 702; Ives v. Van Epps, 22 Wend. (N. Y.) 156; Finney v. Cadwallader,

55 Ga. 78; Lufburrow v. Henderson, 30 Ga. 484; Ansley v. Bank, 113 Ala. 467. (e) Recoupment has a wider application in America than in England. Emery v. Ry. Co., 77 Mo. 345. (f) An agent can recoup any claim which his principal might recoup. Meechem on Agency, sec. 1429. (g) The matter of recoupment must be connected with plaintiff's cause of action, but "connection" has a broad signification, it may be slight or intimate, remote or near, and should be construed liberally with a view of settling disputes in one action as far as possible. 34 Cyc. 687. (h) Recoupment is not based on any statutory regulation, but is controlled by principles of common law. Raymond v. State, 54 Miss. 563. (3) The State may recover the amount of excessive or illegal compensation or fees paid to an officer or agent in an action brought against him, even though paid under a mistake of law. 36 Cyc. 865; Tracy v. Swartout, 34 Pet. (U. S.) 80, 9 L. Ed. 354. (4) The Legislature has directed that words and phrases used in statutes shall be taken in their plain or ordinary and usual sense. Sec. 7058, R. S. 1919.

DAVID E. BLAIR, J.—Original proceeding by mandamus to compel the State Auditor to approve certain accounts of relator. The petition was filed and respondent entered his appearance and waived the issuance of our alternative writ. The facts are undisputed and are gleaned from the amended petition, respondent's amended return and relator's reply thereto. A demurrer was filed to a portion of relator's reply.

Relator is assessor of the city of St. Louis and respondent is auditor of this State. As such assessor relator filed with respondent and respondent refused to approve the following account:

Expense U. S. postage (receipts heretofore filed with respondent)  ........ $    12.00
Expense clerk hire (pay roll heretofore filed with respondent)  ........... 3,123.80

County Clerk Work—Sec. 12997, R. S. 1919—Extending tax on 1318 returns at 3 cents each .................... 39.54
Making tax book for Collector at 10 cents per 100 words and figures (26,670) . 26.67
Fifty cents per $100,000 valuation ..... 7.50
One-tenth of 1% total tax ($194,429.68) 194.42
Filing and safekeeping 1747 lists at $\frac{1}{2}$ cent each ............................ 8.74
Making income assessment book, 10 cents per 100 words .................... 26.67
Assessor's Work—Sec. 12816, R. S. 1919— Taking 509 corporation returns at 20 cents each ...................... 101.80
Taking 1240 individual returns at 20 cents each ............................ 248.00
Entering 311 corporation returns at 3 cents each ...................... 9.33
Entering 1007 individual returns at 3 cents each ............................ 30.21

$3,828.68

Relator is the proper officer for taking and receiving income tax returns in the city of St. Louis. The account rendered covers the period from May 1, 1922, to December 1, 1922. The controversy is as to the amount for which the State is liable. It is admitted that, save for the question of recoupment to be noticed later, whatever is due relator upon such account is due and payable to him by the State and that there are sufficient funds in the State Treasury appropriated and unexpended to pay the account.

Respondent admits that relator is entitled to compensation for, and we may therefore omit from further consideration, certain items in said account, as follows:

Expense U. S. postage ................. $ 12.00
Extending tax on 1318 returns at 3 cents each ............................ 39.54

Making tax book for Collector at 10 cents
    per 100 words and figures  .......... 26.67
50 cents per $100,000 valuation  .......... 7.50
One-tenth of 1% on total tax  .......... 194.42
Entering 311 corporation returns at 3 cents
    each  .......................... 9.33
Entering 1007 individual returns at 3 cents
    each  .......................... 30.21

Respondent denies that relator is entitled to any compensation whatever for the following items of said account:

Expense of clerk hire  .............. $3,123.80
Making income assessment book at 10
    cents per 100 words  .............. 26.67

As to the following items, respondent admits relator is entitled to part of the compensation claimed, to-wit:

a.  Item of filing and safekeeping 1747 lists
    at $\frac{1}{2}$ cent each, amount claimed  ........ $8.74
Respondent concedes relator is entitled to $6.59 for 1318 lists and denies liability for 431 lists, amounting to $2.15.

b.  Item of taking 509 corporation returns
    at 20 cents each, amount claimed,  .... $101.80
Respondent concedes relator is entitled to $62.20 for 311 corporation returns and denies liability for 198 corporation returns, amounting to $39.60.

c.  Item of taking 1240 individual returns at
    20 cents each, for which relator claims  $248.00
Respondent concedes relator is entitled to $201.40 for taking 1007 such returns and denies liability for taking 233 such returns, amounting to $46.60.

I.  The main controversy centers around relator's claim for clerk hire, in the sum of $3123.80. The compensation of assessors for the performance of their duties under our income tax law is provided for by Section 13124, Revised Statutes 1919, which reads as follows:

**Clerk Hire.**

"Assessors and collectors shall be compensated in like manner and in like amounts as for the assessments of other taxes. *Provided,* that in counties in which the assessors and collectors are paid a fixed salary, that in addition to the salary paid, they shall be permitted to charge for work performed in the assessing and collecting of the income tax, as provided by this article, the same fees as are charged by assessors and collectors whose salary is not fixed by law, and which fees so charged by said assessors and collectors for services rendered in assessing and collecting income tax shall be paid by the State."

Relator receives a salary as assessor of the city of St. Louis and is entitled to receive in addition the same compensation for performing his duties under the income tax law as assessors not upon a salary are entitled to receive. To support his claim for allowance of clerk hire relator relies upon Section 13116, which is as follows:

"Every person who has a taxable income shall, on the first day of January of each year, or as soon thereafter as practicable, apply in person or by mail to the assessor of the district in which such person resides, for a proper blank on which to make a return, which said return shall be filed with the assessor on or before the first of March next following. The assessor shall be furnished all necessary printing, stationery, postage and office equipment, and he and his deputies shall be entitled to receive their actual necessary expenses incurred in the performance of their duties; all such expenditures shall be audited and paid out of the state or county treasury in the same manner as other similar expenses are audited and paid."

The words "he and his deputies shall be entitled to receive their actual necessary expenses incurred in the performance of their duties" are the particular words of the section to which relator looks for authority to charge the item of clerk hire. We think those words do not constitute such authority.

Section 13124 provides for the *compensation* of the assessor. Therefore, the words quoted from Section 13116 have no reference to the compensation of the *assessor himself,* and the same consideration argues against a meaning for the words as referring to compensation or salary to deputies, assuming that deputies include clerks. Even if clerk hire may be regarded as an expense item to the assessor, no such expense item would be incurred by his deputies. The words "actual necessary expenses" are used in the same sense in referring to the assessor and to his deputies.

Section 13124 provides that assessors shall be compensated in like manner and in like amounts as for assessment of other taxes. Their compensation for assessment of other taxes is fixed by Section 12816, as amended by Laws 1921, page 671. Such compensation is in lieu of salary, except where a salary is provided by law. In that case the salary provided for is in lieu of fees. Section 12762 provides that the assessor may appoint as many deputies as he needs, "to be paid out of the fees allowed to such assessor." It is, therefore, the plain purpose of the statute, where the assessor is compensated upon the fee basis, that he shall pay *out of such fees* all of the salaries of deputies (including clerks) in making such assessments. Section 13124 provides that he shall be compensated in the same manner for making and receiving income tax returns. There is, therefore, no escape from the conclusion that the assessor must pay salaries of all necessary deputies and clerks out of the fees allowed him for taking and receiving income tax returns. The "actual necessary expenses" provided for do not include salaries of any character. The clear meaning of Sections 13116 and 13124 is that the assessor, in addition to the fees allowed by law, shall be entitled to have furnished to him, without deduction from such fees, all his necessary printing, stationery, postage and office equipment and that he shall be re-imbursed for all outlays made by himself and his deputies by way of expenses in doing the work,

for the doing of which work he and they are fully paid out of the fees allowed by law.

Before the State can be held liable for the payment of a fee or expense incurred in its behalf, the person or officer claiming such fee or expense must be able to point out the law authorizing such payment. [Williams v. Chariton Co., 85 Mo. 645; State ex rel. v. Wilder, 197 Mo. l. c. 32; Sanderson v. Pike Co., 195 Mo. l. c. 605.] This relator has not done. The rule is that mandamus will not lie unless the party asking such relief has established his clear legal right thereto. [State ex rel. v. McIntosh, 205 Mo. l. c. 635; State ex rel. v. Lesueur, 136 Mo. l. c. 459.] The words "he and his deputies shall be entitled to receive their actual necessary expenses incurred in the performance of their duties," fall far short of constituting clear and satisfactory authority for the payment by the State of clerk hire for assessors.

The argument of hardship and that an officer should not be compelled to incur a financial loss, in performing the duties incident to his office, cannot be considered by the courts in passing upon the rights of relator, as fixed by the statute. Failure to provide a salary or fee for a duty imposed upon an officer by law does not excuse his performance of such duty. [State ex rel. v. Brown, 146 Mo. l. c. 406.] It may be that an assessor actually sustains a financial loss in the performance of his duties under our State Income Tax Law. But such fact is for consideration by the Legislature, and not by the courts.

In view of what we regard as the plain provision of the statute that clerk or deputy hire shall be paid by the assessor out of the fees received by him, the cases of Ewing v. Vernon Co., 216 Mo. 681, and Harkreader v. Vernon Co., 216 Mo. 696, cited and relied upon by relator, need not be discussed.

II. It does not appear that relator is entitled to separate compensation for the item, "Making income assessment book at 10 cents per 100 words, $26.67." This

charge seems to be for clerical work upon a book kept for that purpose. No statutory authority for the charge is pointed out. Relator contends that it is authorized by Section 13117. We do not think so. That section provides that a separate book, known as the "Income Assessment Book" shall be furnished to the assessor and the cost of furnishing such book in blank form certainly should be allowed him. But the statute does not contemplate that the entries therein shall be made before the book is turned over to the assessor. Its entries must be made by the assessor after the returns are in and he has ascertained the names "of all persons having a taxable income." If this is not true, it is a strange coincidence that the item of making the completed tax book for the collector at ten cents per hundred words amounted to exactly the same figure, to-wit, $26.67. The latter item is undisputed.

<span style="float:left">Income Assessment Book.</span>

Any information the assessor may receive from lists of income taxpayers of the previous year or lists of employees receiving salaries of such amount as to make such persons apparently liable to pay an income tax, would be most useful in making up the assessor's current "income assessment book," but it does not appear that such names should be placed upon such book, unless such persons are liable for the tax for the current year. In any event, no authority is shown for compensation to the assessor for copying into such book a list of names furnished by the State Auditor or any other person.

III.    Determination of the liability of the State to compensate relator for a part of the items for taking certain individual and corporation returns, depends upon what is meant by "taxable income."

<span style="float:left">Income Returns.</span>

Relator contends that the words "taxable income" relate to the source, class or nature of a given income, rather than to the amount thereof. But it is evident that both source and amount must be considered in determin-

ing whether a given income is taxable. All incomes from sources not specifically exempted (Section 13109) over and above the further general exemptions and deductions provided for (Sections 13110 and 13111) are taxable. Without entering into a consideration of fine shades of meaning of words, we are satisfied that "taxable income" means income which may be taxed after all exemptions and deductions have been allowed from the total income. Section 13116 plainly contemplates that only persons having a "taxable income" shall make returns, which means that only persons shall make such returns who have incomes from taxable sources of such size that something is left to which the tax may be applied after all lawful deductions are made. For receiving and filing such returns (Sec. 13116) the assessor is entitled to be compensated "in like manner and in like amounts as for the assessments of other taxes." [Sec. 13124.] By Section 12816, Revised Statutes 1919, as amended by Laws 1921, page 671, assessors in counties of over 45,000 inhabitants are allowed twenty cents per list for all lists in excess of 3,000. This is the fee relator is entitled to receive. But this fee is payable for income tax returns made by persons having a "taxable income."

It is clear from the admitted facts that relator is entitled only to $62.20 for taking 311 corporation returns, and that he is not entitled to fees for taking 198 corporation returns "which did not report any income and on which no taxes were assessable." Relator is entitled to $201.40 for taking 1007 individual returns and is not entitled to compensation for taking 233 such returns in which were reported "net incomes, the amount of which, however, were not sufficient to require the assessment of a tax."

IV. Respondent admits that relator is entitled to one-half cent each for filing and safekeeping 311 corpora-

305 Mo.—23.

tion returns and 1007 individual returns, which are those reporting a taxable income, or a total of $6.59,

*Safekeeping of Returns.* as against the sum of $8.74, claimed by relator, for filing and safekeeping all returns. The statute (Sec. 12997) authorizes such a fee to be paid to the county clerk for filing, preserving and safekeeping ordinary assessment lists. If the returns must be preserved, Section 12816, as amended, authorizes that fee for such service, to be paid to the assessor. Section 13136 requires the assessor to destroy income tax returns within six months after the tax becomes due, unless the tax has not been paid. The clear implication therefrom is that an income tax return may be destroyed at any time prior to such six months, if the tax has been paid. It is evidently contemplated that income tax returns shall be kept and preserved, at least to that extent. But returns showing no taxable income are not required to be kept and relator is only entitled to a fee for safekeeping and preserving such returns or the sum of $6.59 for that item of his account.

V.   We have thus found that $589.86 of relator's account is properly due him from the State. Respondent contends that he may lawfully withhold the payment of this amount for the reason that he has previously overpaid relator on account of items, which he now claims relator was not entitled to receive when so paid. Such payments covered items for charges similar to those we have herein disallowed. Respondent claims this right under authority of the law of recoupment. There is no question under the record that respondent has previously paid relator money to which he was not entitled. Relator admits in his reply that, for the item of clerk hire alone, he received $1820.92 on a claim filed January 2, 1922, and $8124.36 on his claim filed May 5, 1922, as well as compensation for other items we have disallowed.

Relator has not briefed the question of the right of respondent to recoupment for moneys improperly paid

out.   He thus apparently concedes that, if he is not entitled to receive clerk hire and the other items in dispute, the law of recoupment applies.   His refusal so to meet the issue on this point is a tacit admission that such course would avail him nothing, if he is and was not entitled to the compensation claimed.

In State ex rel. Barker v. Scott, 270 Mo. 146, where a clerk of the county court wrongfully certified that he had extended certain taxes and had been paid therefor by the State before such work was done, it was held that the State could recover money so paid under a mistake of law.   But such recovery was not allowed in that case, because the work was subsequently done by the clerk. However, the right to recover money paid out under mistake of law under such circumstances was clearly recognized.

The same rule had previously been laid down in Lamar Township v. Lamar, 261 Mo. 171.   In distinguishing between payments under mistake of law by individuals and such payments by public officials, Judge FARIS there said:

"Certainly in a case like this of dealings between public officers with the public's money, no excuse for invoking this rule can be found in logic, nor in our opinion can such excuse be found in the decided cases.   The rule in such case is thus stated in 30 Cyc. 1315: 'Although there are cases holding the contrary, the better rule seems to be that payments by a public officer by mistake of law, *especially when made to another officer,* may be recovered back.'   Ada County v. Gess, 4 Idaho, 611; Heath v. Albrook, 123 Iowa, 559; Ellis v. State Auditors, 10 Mich. 528; Allegheny Co. v. Grier, 179 Pa. St. 639; State v. Young, 134 Iowa, 505; McElrath v. United States, 12 Ct. Cl. 201.]"

Certainly, if the State may, in a separate suit, recover back money paid by one of its officials to another public official under mistake of law, it may withhold money admittedly due such public official which is less in amount

than the sum previously paid him by mistake. We will not pursue the question further since relator has cited no authority to the contrary.

For the reasons outlined, we hold that relator is not entitled to the peremptory writ, and it is ordered that it be denied. *Ragland, White* and *Walker, JJ.,* concur; *Graves, C. J.,* and *Woodson, J.,* dissent.