**BROWN GROUP, INC., Petitioner,**

v.

**ADMINISTRATIVE HEARING COMMISSION and Ray S. James, Director of Revenue, Respondents.**

No. 64130.

Supreme Court of Missouri,
En Banc.

April 26, 1983.

Rehearing Denied May 31, 1983.

Juan D. Keller, St. Louis, for petitioner.

John Ashcroft, Atty. Gen., Jay Daugherty, Asst. Atty. Gen., Jefferson City, for respondents.

GUNN, Judge.

This appeal involves construction of the revenue laws; therefore, jurisdiction is vested in this Court pursuant to Mo. Const. art. V, § 3. Petitioner raises four issues on appeal: (1) Whether federal taxable income under § 143.431, RSMo 1978[1] may be less than zero; (2) whether additional assessments may be made by subordinates of the Director of Revenue; (3) whether royalties paid by a foreign corporation to petitioner may be excluded from the multiplicand of the single factor formula; and (4) whether the applicable statute of limitations is four years under § 143.240, RSMo 1969 or three years under § 143.711.1.

Petitioner, a manufacturer and wholesaler of shoes, is the parent company of an affiliated group and is incorporated under the laws of New York. Its principal place of business is Clayton, Missouri.

For the years in question, petitioner elected to use the single factor formula for apportioning income and in so doing excluded certain royalties from the multiplicand of the formula.[2] The royalties concerned

---

1. All references are to RSMo 1978 unless otherwise indicated.

2. The single factor formula is a method of apportioning income to Missouri when the amount attributable to this state does not lend itself to segregation.

   (1) The numerator of the fraction is the total of:

     (a) the amount of sales which are transactions wholly in this state, and

     (b) one-half the amount of sales which are transactions partly within this state and partly without this state.

   (2) The denominator of the fraction is total sales.

The fraction thus obtained is multiplied times net income to determine the proportion of income to be used to arrive at the amount of Missouri taxable income. *See* § 143.451.-2(2)(b).

had been paid to petitioner by Nippin, Inc., a Japanese corporation, for the use of trade names, shoe designs and shoe patterns developed by Wohl Shoe Company, a wholly owned subsidiary of petitioner. On petitioner's 1975 federal income tax return it recorded a loss of $5,000,532 and entered that amount, representing its federal taxable income, on line 1 of its Missouri income tax return.

Upon audit of 1973, 1974 and 1975 tax returns, the Department of Revenue included the royalties in petitioner's base income, (*i.e.,* the multiplicand of the formula) for all three years and disallowed petitioner's entry of a negative figure on line 1 of the Missouri tax return, increasing the amount to zero. On June 13, 1977, the Department issued final notices of income tax deficiency for fiscal years ending November 3, 1973, November 1, 1974, and November 1, 1975.

Petitioner unsuccessfully protested the additional assessments [3] to the Director of Revenue (Director). Appeal to the Administrative Hearing Commission (Commission) resulted in affirmance of the Director's decision, and this appeal followed.

Petitioner first alleges that the Commission erred in holding that federal taxable income for purposes of line 1 on the Missouri income tax return may not be a negative number. Section 143.431.1 provides that Missouri taxable income of a corporation shall be so much of its federal taxable income for the taxable year as is derived from sources within this state. The Director contends that in administering the Missouri income tax statutes the amount entered on line 1 of the Missouri tax return cannot be less than zero. Petitioner argues

that I.R.C. § 63(a) (1954) defines federal taxable income as "gross income, minus the deductions allowed by this chapter," which at times may be a negative number. The Director argues that allowance of a negative number on line 1 would result in multiple benefits to petitioner, as the loss would be available to offset any positive Missouri modifications and provide a carry back on petitioner's federal tax return to offset taxable income in prior years.

I.R.C. § 172(c) (1954) defines net operating loss as "the excess of the deductions allowed by this chapter over the gross income." This section indicates that when deductions exceed gross income yielding negative taxable income, the result is a net operating loss. It is apparent that while negative taxable income may exist in a technical sense, it is actually a net operating loss. This interpretation comports with the practical connotation of taxable income as "income which may be taxed after all exemptions and deductions have been allowed from the total income." *State ex rel. Buder v. Hackmann,* 305 Mo. 342, 265 S.W. 532, 535 (banc 1924). If exemptions and deductions exceed total income, a loss results.

A taxpayer with a loss on its federal tax return is able to offset income from prior years [4] pursuant to § 172 net operating loss provisions resulting in less federal taxable income in those prior years. Under the current Missouri income tax statutes, this change requires the taxpayer to file an amended Missouri corporate tax return pursuant to § 143.601. [5] This statutory scheme permits a taxpayer to receive a Missouri benefit from the federal tax net operating

**3.** On June 2, 1977, petitioner filed protests to the additional assessments for 1973–75 income taxes. By letter dated June 20, 1977, petitioner requested that its premature protest be applied to the June 13, 1977 assessments.

**4.** Section 172 allows for the deduction of a net operating loss against income reported in the three tax years immediately preceding and the five years immediately following the year of the loss.

**5.** Section 143.601 provides in part:
   If the amount of a taxpayer's federal taxable income reported on his federal income tax

return for any taxable year is changed or corrected ... the taxpayer shall report such change or correction in federal taxable income within ninety days after the final determination of such change, correction, or renegotiation, or as otherwise required by the director of revenue.... Any taxpayer filing an amended federal income tax return shall also file within ninety days thereafter an amended return under sections 143.011 to 143.996, and shall give such information as the director of revenue may require....

loss provisions. Therefore, if a taxpayer were allowed to include a negative amount on line 1 of the Missouri return the result would be multiple benefits arising from a single loss. For example, the loss would offset positive modifications prescribed by § 143.431.2 for the computation of Missouri taxable income and still be available to reduce federal taxable income in prior years.

Petitioner argues that in this case the loss would not be subject to multiple use because the entire loss was used to offset federal taxable income in 1972, a year when Missouri taxable income was not derived with reference to federal taxable income. See § 143.040, RSMo 1969. Because the tax laws in 1972 did not determine Missouri taxable income with reference to federal taxable income, the change in 1972 federal taxable income resulted in no Missouri tax benefit from the 1975 federal loss.

■ While there is no salutary result for petitioner in this particular instance, "[a]n allowance for deductions from gross income does not turn on general equitable considerations. Deductions depend upon legislative grace and are allowable only to the extent authorized by statute." *M.F.A. Central Cooperative v. Bookwalter,* 427 F.2d 1341, 1344 (8th Cir.1970), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1303, 31 L.Ed.2d 588 (1972), quoting from *Greenspon v. Commissioner of Internal Revenue,* 229 F.2d 947, 954, (8th Cir. 1956). *Accord: Armco Steel Corp. v. State Tax Commission,* 580 S.W.2d 242, 245 (Mo. banc 1979); *Mobile Oil Corp. v. State Tax Commission,* 513 S.W.2d 319, 322–23 (Mo. 1974). The definition of federal taxable income cannot fluctuate according to whether a taxpayer receives the full benefits of the federal net operating loss provisions. The fact that petitioner derived no Missouri benefit from the federal loss does not require this court to ignore the provisions of § 172 and their effect on federal taxable income. Certainly, any tax exemption must clearly appear in the statute, *State ex rel. Conservation Commission v. LePage,* 566 S.W.2d 208, 211 (Mo. banc 1978), and none exists here for petitioner to grasp.

*Tebon v. Commissioner of Internal Revenue,* 55 T.C. 410 (1970), considers this point. In *Tebon,* the tax court considered the question of whether in computing averagable income within the meaning of §§ 1301 through 1305, base period income could be less than zero. The Commissioner issued a regulation which stated that " * * * [b]ase period income for any taxable year may never be less than zero." The taxpayer asserted that the regulation was invalid because the unqualified use of the term "taxable income" in the statute must be deemed to include negative taxable incomes. The tax court, finding the taxpayer's recourse was to § 172, upheld the regulation, as it was related to the overlapping character of the net operating loss provisions and its provisions were predicated upon the reasonable proposition that where negative taxable income is involved, the net operating loss section should take precedence over the averaging provisions.

■ In this case, the stance taken by petitioner is that because § 143.431.1 uses the term "federal taxable income," that phrase must be interpreted with reference to § 63 only and without consideration of any other federal code provisions. However, the Revenue Act "must be construed as an entirety with the purpose of giving as full meaning to all expressions therein as harmony will allow." *Dubinsky v. Becker,* 64 F.2d 601, 602 (8th Cir.1933).

■ When a taxpayer incurs a federal loss its sole recourse is to § 172. That is the only reasonable consequence of construing § 63 in harmony with § 172. Any other holding would subject a single loss to multiple use in Missouri without the requisite statutory authority. Accordingly, the Administrative Hearing Commission properly held in this case that the amount entered on line 1 of the Missouri corporate income tax return may not be a negative figure.

### Point II

The second point involves petitioner's allegation that the additional assessments of tax were void as not being personally made

by the Director of Revenue. Petitioner contends that § 143.611 [6] requires the personal consideration and action of the Director. However, other statutes pertaining to the powers and duties of the Director exist and must be considered to determine whether certain authority may be delegated.

◼ Subdelegation is the transmission of authority from the heads of agencies to subordinates. 1 K. Davis, Administrative Law Treatise § 9.01 at 616 (1958). And various statutes may be read as authorizing the Director to delegate certain authority to his subordinates. For example, § 143.971.2 provides in pertinent part:

2. The *director of revenue* for the purpose of ascertaining the correctness of any return, or for the purpose of making an estimate of taxable income of any person, *shall have power to examine or to cause to have examined, by any agent or representative designated by him* for that purpose, any books, papers, records, or memoranda bearing upon the matters required to be included in the return, . . . .

(Emphasis added.)

Furthermore, § 32.050.2(2) provides:

2. With respect to all divisions in the department, *the director shall:*

\* \* \* \* \* \*

(2) *Coordinate, consolidate and arrange the functions, procedures and facilities* of the several divisions as is necessary *to bring about economy and efficiency* in the operation of the department of revenue and each division of the department.

(Emphasis added.)

Finally, § 32.023 authorizes the creation of a division of compliance invested with the power to plan and organize the work of examining the reports and returns of taxpayers with the general authority to advise

the Director and the Attorney General in the enforcement of the revenue laws.

These statutes may reasonably be construed as authorizing the delegation of certain authority with respect to tax returns to achieve efficiency and economy in the assessment and collection of Missouri income taxes. The characteristics of the Department necessitate that delegation of function and authority be a predominant feature of its operation and procedure. 2 Am. Jur.2d *Administrative Law* § 221 (1962). The authority to subdelegate need not be expressed in the statute and may be implied if there is a reasonable basis for such implication. M. Forkosch, Administrative Law § 86 at 120 (1956).

◼ In this case, petitioner urges an interpretation of the statutes that would prove so burdensome that the Director would be unable to perform required duties. In construing statutes it must be presumed that the legislature intended a logical and reasonable result with substantive effect. *State ex inf. Ashcroft v. City of Fulton,* 642 S.W.2d 617, 620–21 (Mo. banc 1982); *State ex rel. Safety Ambulance Service, Inc. v. Kinder,* 557 S.W.2d 242, 247 (Mo. banc 1977); *Breeze v. Goldberg,* 595 S.W.2d 381, 382 (Mo.App.1980). Accordingly, the more reasonable interpretation of the statutes is that they permit the Director to delegate certain authority so that efficient administration of the Department of Revenue may be achieved. *See* § 32.050.2(2) and § 143.971.2 (granting the Director the power to have matters relating to tax returns examined by an agent designated by him).

◼ In this case, the Director has exercised his discretion by formulating policies regarding corporate income tax (*e.g.,* taxable income may not be less than zero, royal-

---

**6.** Section 143.611.1 provides:

143.611. Examination of return.—1. As soon as practical after the return is filed, the *director of revenue shall examine* it to determine the correct amount of tax. If the director of revenue finds that the amount of tax shown on the return is less than the correct amount, he shall notify the taxpayer of the amount of the deficiency proposed to be assessed. If the director of revenue finds

that the tax paid is more than the correct amount, he shall credit the overpayment against any taxes due under sections 143.011 to 143.996 from the taxpayer and refund the difference. No deficiency shall be proposed *and no refund shall be made pursuant to this* or any section of sections 143.011 to 143.996 unless the amount exceeds one dollar. (Emphasis added.)

ties may not be excluded) and has properly caused the returns to be examined. He merely delegated the authority to perform the ministerial act of signing the additional assessments, which is a proper subject of delegation. *See State ex rel. Skrainka Construction Co. v. Reber*, 226 Mo. 229, 126 S.W. 397, 399 (1910) (ministerial acts may be delegated by officers to others). This construction of the statutes permits the Director to attend to those important duties required by statute to be performed and to delegate to subordinates the performance of ministerial duties which he alone could not otherwise discharge. Accordingly, the additional assessments are not void for want of the Director's personal signature, and the Administrative Hearing Commission properly ruled this point against petitioner.

### Point III

Petitioner's third point involves the inclusion of royalties from a corporation of a foreign nation in the multiplicand of the single factor formula. The Director argues that when a taxpayer elects under § 143.-451.2(2) to apportion income using the single factor formula it is precluded from allocating any of its income prior to apportionment and that the legislature intended to levy and apportion tax upon the entire net income. The petitioner counters that income from sources wholly outside Missouri is not taxable.

The royalty income in question arose from contracts between petitioner and Nippon Shoe Company, Limited, a Japanese corporation. The contracts permitted Nippon to use certain trade names, shoe designs and shoe patterns owned by petitioner with the amount of income to be paid petitioner for their use being a variable percentage of the gross domestic wholesale price charged to retailers by Nippon, depending on the number of pairs of shoes sold.

Section 143.071 imposes a tax upon the Missouri taxable income of corporations, and § 143.431.1 defines Missouri taxable income as so much of a corporation's federal taxable income for the taxable year as is derived from sources within Missouri. Section 143.451 pertains to the division of in-

terstate income and provides in pertinent part:

1. *Missouri taxable income* of a corporation *shall include all income derived from sources within this state.*

\* \* \* \* \* \*

(2) The taxpayer may elect to compute the portion of income from all sources in this state in the following manner:

(a) The income from all sources shall be determined as provided, excluding therefrom the figures for the operation of any bridge connecting this state with another state.

(b) The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of Missouri taxable income. . . .

(Emphasis added.)

■ This Court, in construing the predecessor of § 143.451, has held that subsection 1 of § 143.040, RSMo 1969 actually imposed the tax while subsection 2 of the statute dealt only with how to compute the tax levied in subsection 1. *International Travel Advisors, Inc. v. State Tax Commission*, 567 S.W.2d 650, 654 (Mo. banc 1978). So too, in subsection 1 of § 143.451, a tax is imposed which includes all income derived from sources within this state. Therefore, the Director's argument that § 143.451.2(2)(b) extends to tax income from all sources because it uses the term "net income" without qualification cannot be accepted in light of those provisions which restrict taxation of a corporation's income to that derived from

sources within this state. *See* §§ 143.431 and 143.451.1.

More historical background on foreign paid royalties comes from *A.P. Green Refractories Co. v. State Tax Commission,* 621 S.W.2d 340 (Mo.App.1981) which deals with the issue of whether royalties paid to a taxpayer by foreign corporations for the use of trademarks, trade names and manufacturing processes can be excluded from taxable base income in applying the single factor formula. In *Green Refractories,* the taxpayer argued that legislative policy was against imposing a tax on income from sources wholly outside Missouri. The Western District determined, however, that the Multistate Tax Compact [§§ 32.200–32.260] added a new dimension to the tax laws, which, according to the court, redirected the inquiry from source of income to the jurisdiction of the other state to tax the income. *Id.* at 343. Finally, the Western District held that *M.V. Marine Co. v. State Tax Commission,* 606 S.W.2d 644 (Mo. banc 1980), judicially declared that the jurisdiction to tax criterion of the Compact determines the apportionment of multistate income for taxation purposes—not the source of revenue. *A.P. Green Refractories Co. v. State Tax Commission,* 621 S.W.2d at 345. The judgment of the trial court in *Green Refractories* was thereupon reversed and the cause remanded to the State Tax Commission for a redetermination of the issues under the provisions of the Compact *in pari materia* with the other revenue laws. Thus, *Green Refractories* did not dispose of the issue in this case—whether the single factor formula allows a taxpayer to allocate income from sources outside Missouri prior to apportionment of its income.

Following *A.P. Green Refractories,* which placed heavy reliance on *M.V. Marine Co. v. State Tax Commission,* 606 S.W.2d 644, this Court decided *Goldberg v. State Tax Commission,* 639 S.W.2d 796 (Mo. banc 1982),

which reexamined *M.V. Marine.* As a result, the Court determined that the flaw in *M.V. Marine* dictum [7] rested "upon a fundamental misinterpretation of the purpose underlying the adoption of the Compact. The Compact was never intended by anyone to be a substantive taxation statute." *Goldberg v. State Tax Commission,* 639 S.W.2d at 799. The result in *Goldberg* was a return to the "source of income" test of § 143.451 and its predecessors for determining apportion. *Id.* at 801.

Felicitious to the circumstances of these proceedings is *A.P. Green Fire Brick Co. v. Missouri State Tax Commission,* 277 S.W.2d 544 (Mo.1955), for it finds that "source of income" is the place in which the trademarks, trade names and manufacturing processes are used and the income produced. *Id.* at 547. That means that the source of income from Nippon, Inc. royalties was wholly outside Missouri, as the trade names and manufacturing processes were used and the income produced in Japan and other foreign countries to which Nippon, Inc. exported shoes. Since the royalties were a source of income wholly without Missouri, they do not figure in the taxing formula.

The Director's response is that *A.P. Green Fire Brick* does not apply as the court was dealing with a statute that imposed an income tax upon corporate income "from all sources within this state," inferring that no such limitation applies to the case *sub judice.* But the Director's offered distinction cannot overcome the language of §§ 143.431.1 and 143.451.1, the present taxing statutes, which define Missouri taxable income as so much of a corporation's federal income tax as is derived from "sources within Missouri." This clear statement of legislative intent is not enervated in any regard by the language of § 143.451.2(2)(b) indicating that "net income" is to be multi-

---

7. In *Goldberg,* this Court determined that the question of whether the leasee's income from the use of the barges was taxable in Missouri was never an issue in *M.V. Marine* and had no bearing on whether or not consideration given for the leases was taxable as income earned solely in Missouri. The discussion of the Mul-

tistate Tax Compact was unnecessary to the decision. Therefore, the holding in *M.V. Marine* that the Compact's jurisdiction to tax criterion rather than the source rationale of either former § 143.040 or successor § 143.451 determines the apportionment of multistate income for purpose of taxation was dictum.

plied by the fraction obtained pursuant to that section.

■ We hold fast to the basic precept that tax statutes are to be strictly construed in favor of the taxpayer and against the taxing authority. *Staley v. Missouri Director of Revenue*, 623 S.W.2d 246, 250 (Mo. banc 1981). The Director's argument that upon election by the taxpayer to use the single factor formula, all income from any source must be included in the base income is out of phase with that principle.

Accordingly, the Administrative Hearing Commission's decision is reversed with respect to the propriety of including the foreign royalties in petitioner's net income base under the single factor formula for the 1973–75 tax years.[8]

### Point IV

The final issue raised by petitioner alleges that the Administrative Hearing Commission erred in holding that the statute of limitations applicable to petitioner's fiscal year beginning in 1972 and ending November 3, 1973, is four years under § 143.240, RSMo 1969, rather than three years under § 143.711.1. Both parties agree that if the three year statute of limitations applies, the Director's notice of income tax deficiency for fiscal year ending November 3, 1973 was issued after the period of limitations had run.

Section 143.009 provides that §§ 143.011 to 143.996 shall become effective on January 1, 1973 but shall apply only to taxable periods beginning on or after January 1, 1973. This portion of the statute indicates that for petitioner's 1972–73 fiscal year §§ 143.011 to 143.996 did not apply.

The final sentence of § 143.009 provides the following:

Notwithstanding the first four sentences of this section, a taxpayer who has a fiscal period which includes parts of each of the years 1972 and 1973 *may determine his tax and taxable income pursuant to the provisions of sections 143.011 to 143.996 if he files an election* to that effect with the director of revenue on or before the due date (including extensions of time) of his return for the taxable period.

(Emphasis added.)

Petitioner construes this language to require application of the three year statute of limitations provided for in § 143.711.1. However, petitioner's construction of the statute ignores the language of § 143.009 which provides that the effective date of January 1, 1973 applies only to those taxable periods beginning on or after January 1, 1973, leaving § 143.240, RSMo 1969 as the applicable statute of limitations.

■ That portion of § 143.009 permitting election of §§ 143.011 to 143.996 specifically limits its application to a determination of tax and taxable income under those provisions. In construing statutes, the Court's primary responsibility is to ascertain intent of General Assembly from language used and to give effect to that intent. *Goldberg v. Administrative Hearing Commission*, 609 S.W.2d 140, 144 (Mo. banc 1980). Furthermore, all provisions of a statute must be harmonized and every word, clause, sentence and section must be given some meaning. *Staley v. Missouri Director of Revenue*, 623 S.W.2d 246, 250

---

8. Petitioner raises various constitutional arguments demonstrating that the royalties may not be taxed. Because this issue may be resolved by construing the Missouri tax statutes, there is no reason to address the issue of whether Missouri could constitutionally tax income from sources within and without this state if the statutes so provided.

Petitioner cites several recent United States Supreme Court cases discussing the "unitary business" principle. *See Asarco, Inc. v. Idaho State Tax Comm'n*, —— U.S. ——, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982); *F.W. Woolworth Co. v. Taxation & Revenue Dept. of New Mexico*, —— U.S. ——, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982); *Exxon Corp. v. Department of Revenue*, 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). Each of these cases involved taxation of income received by a parent from its subsidiary. In this case, the royalty income received by petitioner was from an unrelated foreign corporation so that the "unitary business" principle is not dispositive. *See* Note, Supreme Court Decisions in Taxation: 1981 Term, 36 Tax Lawyer 421, 460–68 (1983) (discussion of due process and the unitary business principle of state taxation).

(Mo. banc 1981). Therefore, in construing the first and last sentences of § 143.009, it is apparent that the legislature intended for the new tax provisions to apply to only those taxable periods beginning after its effective date. However, the legislature did provide a specific exception to this application in that a taxpayer could elect to determine its tax and taxable income pursuant to §§ 143.011 to 143.996. Such an interpretation gives effect to both sentences and yields a reasonable result. The petitioner's construction would render the language "may determine his tax and taxable income" mere surplusage. The Administrative Hearing Commission correctly held that the four year statute of limitations of § 143.240, RSMo 1969 was applicable to petitioner's 1972–73 tax return.

The judgment is reversed with respect to the inclusion of royalties in petitioner's net income base and is affirmed in all other respects.

RENDLEN, C.J., HIGGINS, BLACKMAR and DONNELLY, JJ., and HOUSER, Senior Judge, concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

BILLINGS, J., not sitting.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in the holdings of Points II, III, and IV of the principal opinion. I respectfully dissent, however, from Point I. The principal opinion ignores the clear and unambiguous language of § 143.431(1), RSMo 1978, which states in relevant part:

The Missouri taxable income of a corporation taxable under sections 143.011 to 143.996 shall be so much of its federal taxable income for the taxable year, with the modifications specified in subsections 2 and 3 of this section, as is derived from sources within Missouri as provided in section 143.451.

On November 5, 1968, the constitution was amended to provide as follows:

In enacting any law imposing a tax on or measured by income, the general assembly may define income by reference to provisions of the laws of the United States as they may be or become effective at any time or from time to time.... The general assembly may in so defining income make exceptions, additions, or modifications to any provisions of the laws of the United States so referred to ....

Mo. Const. art. X, § 4(d). The general assembly made the "exceptions, additions, or modifications" appearing in subsections 2 and 3 of § 143.431 and in the sections to which those subsections refer. Those "exceptions, additions, or modifications" do not mandate the construction the state has adopted. Nothing in the income tax scheme requires that a loss shown on a taxpayer's federal income tax return be shown otherwise on the Missouri return. Without specific exception, addition, or modification, the figure appearing on the Missouri return should be the same figure appearing on the federal return, regardless of whether it reflects a profit or a loss.