Dear Mrs. Kelly and Representative Rauch:
Each of you has posed questions relating to the setting of property tax rates. Because of the similarities in the questions posed, we have combined your requests into one opinion. The questions posed by State Auditor Kelly are as follows:
 A. Will changes in the assessed valuation of a substantial number of parcels of agricultural and horticultural land in a county made by an assessor in 1987 pursuant to an assessment and equalization maintenance plan under Section 137.115, RSMo, constitute a "general reassessment" under Section 137.073, RSMo?
 1. Depending upon the answer to the above question, which constitutional and statutory provisions govern the process of setting 1987 tax rates?
 B. To what extent may political subdivisions revise tax rates upward in 1987 under Section 137.115, RSMo and Article X, Section 22(a) of the Missouri Constitution?
The questions posed by Representative Rauch are as follows:
 1. Under the provisions for setting tax rates in Senate Bill 476 of the 1986 session, in a year in which an assessment maintenance and equalization plan is implemented, may political subdivisions increase property tax rates without a public vote to maintain their level of property tax revenues if the assessed valuation of the subdivision decreases? If yes, what are the limitations involved?
 2. Under the special assessment maintenance law tax rate revision provisions, can implementation of a biennial maintenance plan also constitute a "general reassessment" as defined in Section 137.073, RSMo? If yes, may a school district's levy also be adjusted for revenue loss resulting from a reduction in assessed valuation pursuant to Section 164.013, RSMo? Are the levy adjustments provided in HB 1022, et al, 1986, applicable?
 3. If the answer to No. 2 is yes, what effect does the 1980 tax limitation amendment have on increases in tax rates made without a public vote? What are the limitations? Are adjustments limited to one year or can they extend beyond one year?
The questions posed involve an interpretation of various constitutional and statutory provisions.
Article X, Section 22(a) of the Missouri Constitution (enacted as part of what is commonly referred to as the Hancock Amendment) provides:
 Section 22. Political subdivisions to receive voter approval for increases in taxes and fees — rollbacks may be required — limitation not applicable to taxes for bonds. (a). Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. If the definition of the base of an existing tax, license or fees, is broadened, the maximum authorized current levy of taxation on the new base in each county or other political subdivision shall be reduced to yield the same estimated gross revenue as on the prior base. If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
(Emphasis added.)
A copy of Section 137.115, RSMo 1986, as enacted by Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill No. 476, Eighty-third General Assembly, Second Regular Session, is attached hereto as Appendix I.
A copy of Section 137.073, RSMo 1986, as enacted by Senate Committee Substitute for House Substitute for House Committee Substitute for House Bills Nos. 1022, 1032 and 1169, Eighty-third General Assembly, Second Regular Session, is attached hereto as Appendix II.
We have been provided the following additional information regarding the opinion requests:
 Under the provisions of Senate Bill 476, 1986 real property is subject to a biennial assessment review in 1987. The state tax commission has provided counties with a range of productive values for agricultural and horticultural land for 1987 assessment purposes that is considerably lower than the range used in 1986. Thus many rural political subdivisions face a decrease in assessed valuation as a result; some reductions can be substantial.
Section 137.026, RSMo 1986, provides for the State Tax Commission to determine and publish a range of values for each of the several classifications of land classified as agricultural and horticultural property. On or before January 1, 1987, and each odd-numbered year thereafter, the State Tax Commission shall make these ranges of fair value available to the assessors of each county. See also Section 137.021, RSMo 1986. Pursuant to the authority in Sections 137.026 and 137.021, the State Tax Commission has recently amended 12 CSR 30-4.010 to reflect lower values for each grade of agricultural land.
Upward Revision of Tax Rates
As a result of agricultural land having a lower assessed valuation in 1987 than in 1986, the total assessed valuation of political subdivisions in agricultural areas may be substantially less in 1987 than it was in 1986. If such a political subdivision levies the same tax rate in 1987 as it levied in 1986, the property tax revenue for that political subdivision will be substantially less in 1987 than it was in 1986. For example, if a county's 1987 assessed valuation is $20,000,000 but its 1986 assessed valuation was $26,000,000 and its tax rate remains at $0.30 per $100 assessed valuation for both 1986 and 1987, the 1987 revenue from property tax will be only $60,000 compared to $78,000 of property tax revenue in 1986. (This example and future examples do not consider the costs associated with the collection of property taxes and the amount of uncollectible taxes.)
The first issue to be addressed is whether a political subdivision may increase its 1987 property tax rate above the 1986 property tax rate without a vote of the people so as to maintain the same level of property tax revenue even if there has been a decrease in the total assessed valuation of the political subdivision. Continuing with the example set forth above, for the county to receive in property tax revenue for 1987 the $78,000 it received in 1986, its property tax rate would have to increase to $0.39 per $100 assessed valuation in 1987 from the $0.30 per $100 assessed valuation in 1986 ($20,000,000 assessed valuation times $0.39 per $100 assessed valuation equals $78,000 property tax revenue).
Section 137.115.1(2) contains the phrase, "shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce. . . ." (Emphasis added.) Section 137.073.2 contains the phrase, "shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce. . . ." (Emphasis added.) We interpret the word "revise" to mean either an upward or downward change in the tax rate. In interpreting statutes, the fundamental rule is to ascertain the intent of the General Assembly from the language used and to give effect to that intent. Brown Group, Inc. v.Administrative Hearing Commission, 649 S.W.2d 874, 881 (Mo. banc 1983). The plain meaning of the statutory language is to be given effect whenever possible. State ex rel. D.M. v.Hoester, 681 S.W.2d 449, 450 (Mo. banc 1984). The plain and ordinary meaning of "revise" is "to look at or over again for the purpose of correcting or improving." See Webster's Third New International Dictionary. So a revision could be either upward or downward.
This conclusion is reinforced by various changes made by the General Assembly to Section 137.073. In 1985, the General Assembly substituted the word "revision" for the word "rollback" in the exception clause of the third sentence of subsection 5(2) of Section 137.073. In 1986, the General Assembly substituted the word "revision" for the word "rollback" in the first sentence of subsection 5(2). When the legislature has altered an existing statute such change is deemed to have an intended effect, and the legislature will not be charged with doing a meaningless act. State v. Sweeney, 701 S.W.2d 420 (Mo. banc 1985). These changes further reflect the legislative intent to allow a change upward as well as downward when referring to revisions in tax rates.
Therefore, we conclude that political subdivisions may revise their tax rates upward to the extent permitted by statute without a vote of the people, subject to the limitations discussed hereinafter.
General Reassessment
The second issue to be addressed is whether implementation of a biennial maintenance plan can also constitute a general reassessment. Section 137.073.1(1) defines general reassessment as follows:
 137.073. Definitions — revision of prior levy, when, procedure. — 1. As used in this section, the following terms mean:
 (1) "General reassessment", changes in value, entered in the assessor's books, of a substantial portion of the parcels of real property within a county resulting wholly or partly from reappraisal of value or other actions of the assessor or county equalization body or ordered by the state tax commission or any court.
Section 137.115 contains the following provision:
 The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073 resulting from implementing an assessment and equalization maintenance plan in each odd-numbered year, . . .
(Emphasis added.)
With respect to setting and revising rates of levy, the provisions of Section 137.115 govern in event of conflict with Section 137.073. However, there is no provision indicating changes constituting a general reassessment as defined in Section 137.073, even if such changes are the result of implementing a biennial maintenance plan, cannot be a general reassessment. Therefore, it is our opinion that changes constituting a general reassessment as defined in Section137.073 are to be considered a "general reassessment" even if the changes are the result of implementing a biennial maintenance plan.
Tax Rates for Schools
The conclusion reached above is particularly meaningful because of the provision in Section 164.013, RSMo 1986, allowing school districts to adjust their Proposition C rollback for loss of revenue due to a decrease in the assessed valuation of real property as a result of general reassessment. Section 164.013
contains the following provision:
 Loss of revenue due to a decrease in the assessed valuation of real property located within the school district as a result of general reassessment, and from state assessed railroad and utility distributable property shall be considered in lowering the rate of levy to comply with this section. . . .
Having concluded above that changes in assessed valuation, if meeting the definition of Section 137.073.1(1), are a general reassessment even if the result of implementing a biennial maintenance plan, school districts can adjust their Proposition C rollback pursuant to Section 164.013.
Related to this issue is whether a school district can make such adjustment only in 1987 or can make such adjustment in 1987 and subsequent years as a result of a decrease in assessed valuation in 1987. It is our opinion that such adjustment in the Proposition C rollback can be made in 1987 and subsequent years. The applicable provision does not limit such adjustment to 1987 only. The statute uses the word "considered" which does not indicate any requirement of applying to one year only.
 Levy Adjustments — Conflict Between Section 137.115 and Section 137.073
The next issue concerns whether tax rates should be adjusted in accordance with the provisions in Section 137.073 or the provisions in Section 137.115. As pointed out previously, Section 137.115 provides that the provisions of Section 137.115
for setting and revising rates of levy shall prevail in event of conflict with the provisions of Section 137.073. Therefore, to the extent there is a conflict between Section 137.115 and Section 137.073 in adjusting tax rates, the provisions of Section 137.115 apply.
Limitation on Upward Revisions
In 1985 when the general reassessment occurred, political subdivisions were required to compute their permissible tax rates under the provisions set out in Section 137.073 and also under the provisions of Article X, Section 22 of the Missouri Constitution. In accordance with subsection 5(2) of Section137.073, each political subdivision was limited in 1985 to levying the lower of rates calculated under these two tests. For example, in 1985 a county's permissible property tax rate for its General Revenue Fund under Section 137.073 may have been $0.30 per $100 assessed valuation and been $0.34 per $100 assessed valuation under Article X, Section 22. The political subdivision was permitted to levy in 1985 a maximum of $0.30 per $100 assessed valuation, the lower of the rates calculated under the two tests.
The final issue raised in your opinion requests concerns whether the tax rate calculated in 1985 under Article X, Section22 of the Missouri Constitution can be exceeded in 1987 without a vote of the people. In the example above, can the tax rate exceed $0.34 per $100 assessed valuation without a vote of the people? It has been a long-standing policy of this office to not opine on the constitutionality of statutes. In addition, we are informed that litigation is being considered regarding this issue and this office does not issue opinions on matters where litigation is pending or threatened. Therefore, we must respectfully decline to opine upon the final issue raised in your opinion requests. See Gershman Investment Corporationv. Danforth, 517 S.W.2d 33 (Mo. banc 1974).
CONCLUSION
It is the opinion of this office that: (1) political subdivisions may revise their property tax rates upward to the extent permitted by statute without a vote of the people, subject to limitations discussed herein; (2) changes in assessed valuation constituting a general reassessment as defined in Section 137.073, RSMo 1986, are to be considered a general reassessment even if the changes are the result of implementing a biennial maintenance plan; (3) school districts can adjust their Proposition C rollback pursuant to Section 164.013, RSMo 1986, as discussed herein; and (4) to the extent there is a conflict between Section 137.115, RSMo 1986, and Section137.073, RSMo 1986, in adjusting tax rates, the provisions of Section 137.115, RSMo 1986, apply. We do not opine on whether the maximum tax rate calculated in 1985 under Article X, Section22 of the Missouri Constitution can be exceeded in 1987 without a vote of the people.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
 APPENDIX I
 137.115. Real and tangible personal property, assessment — equalization maintenance plan — assessor may mail forms — classes of property, assessment percentages. — 1. (1) All other laws to the contrary notwithstanding, the assessor or his deputies in all counties of this state including the city of St. Louis shall, between the first day of January and the first day of June, annually make a list of all real and tangible personal property taxable in his city, county, town or district and, except as otherwise provided in subsection 3 of this section, shall assess all personal property at thirty-three and one-third percent of its true value in money and all real property, including any new construction and improvements to real property, and possessory interests in real property at the percent of its true value in money set in subsection 5 of this section in the following manner: He shall call at the office, place of doing business, or residence of each person required by this chapter to list property, and require the person to make a correct statement of all taxable real property in the county owned by the person, or under his care, charge or management, and all taxable tangible personal property owned by the person or under his care, charge or management, taxable in the county; except that, beginning January 1, 1987, and every odd-numbered year thereafter, in order to maintain equalized assessed valuations, each county assessor shall appraise, equalize, and adjust the assessed valuation of all real property located within his county in accordance with a two-year assessment and equalization maintenance plan approved by the state tax commission. Each assessment and equalization maintenance plan shall encompass all necessary considerations for the implementation of the plan, shall be developed by the assessor and reviewed by the governing body of the county or St. Louis city and shall then be submitted, along with any comments or proposed alternatives of the governing body, to the state tax commission for its consideration, modification and approval. If the state tax commission fails to approve the plan within thirty days after the date submitted and if the state tax commission and the assessor and the governing body of the county involved are unable to resolve the differences within an additional thirty days, then the differences shall be submitted to the circuit court of the county involved for final resolution within an additional thirty days. The decision of the circuit court may be appealed pursuant to chapter 621, RSMo.
 (2) Whenever changes in assessed valuation resulting from implementation of an assessment and equalization maintenance plan within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis city shall notify each political subdivision wholly or partially within the county or St. Louis city of the change in valuation, exclusive of new construction and improvements. Each political subdivision wholly or partially within the county or St. Louis city, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, exclusive of new construction and improvement, substantially the same amount of tax revenue as was produced in the previous year; provided that political subdivisions, except those wholly or partially in first class charter counties adjoining any city not within a county or any city not within a county may, upon action of the governing body, adjust the revised levy as provided by section 22 of article X of the constitution, provided that the consumer price index, as defined in subsection 5 of section 137.073, used in calculating tax rates under this section, shall not exceed five percent. Provided, however, that the governing body of each political subdivision wholly or partially within any first class charter county adjoining any city not within a county or any city not within a county may submit to the voters at any municipal, primary or general election a referendum to allow the levy in each odd-numbered year to be revised as required by section 22 of article X of the constitution, provided, that the consumer price index as defined in subsection 5 of section 137.073, using calculating tax rates under this section shall not exceed five percent. The ballot of submission shall contain but need not be limited to the following language:
 Shall the __________ (governing body) of __________ (political subdivision) be allowed in any odd-numbered year to adjust the rate or rates of levy to increase the amount of the property tax revenue over the prior year as required in section 22, article X of the constitution, provided the percentage used for increased revenues shall not exceed five percent?
[ ] YES
[ ] NO
 If a majority of the votes cast on the proposal by the qualified voters voting thereon are in favor of the proposal, then it shall be in effect. If a majority of the votes cast by the qualified voters voting are opposed to the proposal, then the governing body shall have no power to adopt and shall not resubmit the issue for at least two years. When setting its tax rates, each political subdivision opting to increase its tax revenues under this section shall include in the public notice required by sections 67.110 and 137.055, RSMo, the amount of tax revenue the proposed tax rates will produce above the prior year's revenue, and the equivalent tax rate. A referendum to repeal the proposal may be submitted to the voters by majority vote of the governing body of the political subdivision, or a petition containing the signatures of at least ten percent of the qualified voters voting in the last gubernatorial election who reside in that political subdivision. The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073 resulting from implementing an assessment and equalization maintenance plan in each odd-numbered year, and the revised rate determined under this section shall become the tax rate ceiling as defined under section 137.073 and such rate may be increased only in the manner provided by law and the constitution. The value of "new construction and improvements" shall include the additional assessed value of all improvements or additions to real property which were begun after and were not part of the prior year's assessment. The state auditor shall examine the revised levies and report his findings as to compliance with this section to the clerk of the county commission.
 * 2. Assessors in each county of this state and the city of St. Louis may send personal property assessment forms through the mail.*
 3. Grain and other agricultural crops in an unmanufactured condition shall constitute a separate class of tangible personal property and shall be assessed and valued for the purposes of taxation at one-half of one percent of their true value in money. Manufactured homes, as defined in section 700.010, RSMo, which are actually used as dwelling units, shall constitute a separate class of tangible personal property and shall be assessed and valued for the purposes of taxation at nineteen percent of their true value in money.
 4. The person listing the property shall enter a true and correct statement of the property, in a printed blank prepared for that purpose. The statement, after being filled out, shall be signed and either affirmed or sworn to as provided in section 137.155. The list shall then be delivered to the assessor.
 5. For all tax years ending prior to January 1, 1985, all real property shall be assessed at thirty-three and one-third percent of its true value in money. For each tax year beginning on or after January 1, 1985, all subclasses of real property, as such subclasses are established in section 4(b) of article X of the Missouri Constitution and defined in section 137.016, shall be assessed at the following percentages of true value:
 (1) For real property in subclass (1), nineteen percent;
 (2) For real property in subclass (2), twelve percent; and
 (3) For real property in subclass (3), thirty-two percent.
 6. Manufactured homes, as defined in section 700.010, RSMo, which are actually used as dwelling units shall not be depreciated as personal property but they shall be valued the same as residential real property for the purpose of taxation.
 7. Motor vehicles which are eligible for registration as and are registered as historic motor vehicles under section 301.131, RSMo, shall constitute a separate class of tangible personal property and shall be assessed and valued for the purposes of taxation at five percent of their true value in money.
 (RSMo 1939 § 10950, A.L. 1945 p. 1782, § 10, A.L. 1951 p. 852, A.L. 1959 H.B. 108, A.L. 1972 H.B. 1175, A.L. 1973 H.B. 592, A.L. 1981 S.B. 13, A.L. 1983 S.B. 63, 60, 48, 65 71, A.L. 1985 S.B. 234, A.L. 1985 S.B. 152, A.L. 1986 S.B. 476)
Prior revisions: 1929 § 9756; 1919 § 12766; 1909 § 11348
APPENDIX II
 137.073. Definitions — revision of prior levy,when, procedure. — 1. As used in this section, the following terms mean:
(1) "General reassessment", changes in value, entered in the assessor's books, of a substantial portion of the parcels of real property within a county resulting wholly or partly from reappraisal of value or other actions of the assessor or county equalization body or ordered by the state tax commission or any court;
(2) "Preceding valuation factor", a percentage increase or decrease based on the average of the annual percentage changes in total assessed valuation of a political subdivision over the previous three or five years, whichever is greater. The average shall not be less than zero. The percentage increase or decrease in a three- or five-year period shall be adjusted to eliminate the effect, as near as possible, of increases or decreases in assessed valuation resulting from boundary changes, properties changing from local to state assessment jurisdiction, blanket assessment changes, general reassessment and state tax commission ordered changes occurring in the previous three or five years; For school districts, an additional adjustment shall be made to reflect effects of increases or decreases in state assessed valuation in the county — in the proportion the revenue yield from state assessed valuation has been to total property tax yield from all property in each school district — in calculating the preceding valuation factor;
(3) "Tax rate", "rate", or "rate of levy", singular or plural, includes the tax rate for each purpose of taxation of property a taxing authority is authorized to levy without a vote and any tax rate authorized by election, including bond interest and sinking fund;
(4) "Tax rate ceiling", a tax rate as revised or reduced by the taxing authority to comply with the provisions of this section or when a court has determined the tax rate reduction. This is the maximum tax rate that may be levied in the year of tax rate revision or reduction and in subsequent years, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section;
(5) "Tax revenue", when referring to the previous year, means the actual receipts from ad valorem levies on all classes of property, including state assessed property, in the immediately preceding fiscal year of the political subdivision, plus an allowance for taxes billed but not collected in the fiscal year and plus an additional allowance for the revenue which would have been collected from property which was annexed by such political subdivision but which was not previously used in determining tax revenue under this section. Any political subdivision which annexed property during 1985 and did not adjust the levy to allow for additional revenues from the annexed area may recalculate its tax rate ceiling and adjust the levy upward to the extent necessary to produce revenues which would have been collected on the assessed value of the annexed area at the rate imposed during the preceding year. The term "tax revenue"
shall not include any receipts from ad valorem levies on any property of a railroad corporation or a public utility, as these terms are defined in section 386.020, RSMo, which was assessed by the assessor of a county or city in the previous year but is assessed by the state tax commission in the current year. All school districts and those counties levying sales taxes under chapter 67, RSMo, shall include in the calculation of tax revenue an amount equivalent to that by which they reduced property tax levies as a result of sales tax under sections 67.505 and164.013, RSMo, in the immediately preceding fiscal year but not including any amount calculated to adjust for prior years. For purposes of political subdivisions which were authorized to levy a tax in the year prior to general reassessment but which did not levy such tax, the term "tax revenue", as used in relation to the reduction or revision of tax levies mandated by law for the year of general reassessment or a subsequent year, shall mean that amount which such political subdivisions would have received in their fiscal year which included or ended on December thirty-first of the year prior to general reassessment had they levied the tax they were authorized to levy in that same fiscal year.
2. Whenever changes in assessed valuation that result from a general reassessment of real property within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis city shall notify each political subdivision wholly or partially within the county of the change in valuation, and each political subdivision wholly or partially within the county, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, including state assessed property, substantially the same amount of tax revenue as was produced in the previous year and, in addition thereto, a percentage of the previous year's revenues equal to the preceding valuation factor of the political subdivision.
3. Whenever the assessed valuation of real or real and personal property combined within a political subdivision or taxing authority has increased by ten percent or more over the prior year's valuation by action other than a general reassessment, the political subdivision or taxing authority shall immediately revise and lower the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, including state assessed property, substantially the same amount of tax revenue as set forth in estimates filed by school districts for the current year as required by section 164.011, RSMo, or as estimated in the annual budget for the fiscal year adopted in accordance with chapters 50 and 67, RSMo, by political subdivisions other than school districts. The lower rate of levy as determined by the taxing authority, or when a court has determined the tax rate reduction, shall then be recertified to the county clerk.
4. (1) Where the taxing authority is a school district, it shall only be required hereby to revise and lower the rates of levy to comply with subsections 2 and 3 of this section to the extent necessary to produce from all taxable property, including state assessed railroad and utility property, which shall be separately estimated in addition to other data required in complying with section 164.011, RSMo, substantially the amount of tax revenue permitted in subsections 2 and 3. In the year following tax rate reduction, the tax rate ceiling may be adjusted to offset such district's reduction in the apportionment of state school moneys due to its reduced tax rate. However, in the event any school district in calculating a tax rate ceiling pursuant to this section, requiring the estimating of effects of state assessed railroad and utility valuation or loss of state aid, discovers that the estimates used result in receipt of excess revenues, which would have required a lower rate if the actual information had been known, the school district shall reduce the tax rate ceiling in the following year to compensate for the excess receipts, and the recalculated rate shall become the tax rate ceiling for the tax rate. Notwithstanding other provisions of law, tax rates for public schools or libraries may be reduced, pursuant to this section, below rates established as minimal entitlement levels for participation in state aid funds without loss in such entitlement.
(2) For a political subdivision authorized to submit new or increased tax levies to their voters by legislation adopted in 1985, or in any year in which general reassessment occurs in the county containing the major portion of the political subdivision, the subdivision may levy the full amount authorized by such laws on approval of the vote required by the law and the tax rate ceiling of such political subdivision may be increased to recognize the voted increase.
(3) For a political subdivision revising a tax rate in a year of general reassessment which experiences a reduction in the amount of assessed valuation for that year, due to decisions of the state tax commission or a court under sections138.430 to 138.433, RSMo, or due to clerical errors or corrections in the calculations or recordation of any assessed valuation:
(a) Such political subdivision may revise the tax rate ceiling for each purpose it levies taxes to compensate for the reduction in assessed value occurring after the political subdivision calculated the tax rate ceiling in the year of general reassessment, for purposes of taxes levied in the year following general reassessment and subsequent years. Such revision by the political subdivision shall be made at the time of the next calculation of the tax rate after the reduction in assessed valuation has been determined;
(b) In addition, only in the year following the reduction in assessed valuation as a result of circumstances defined in subdivision (3) of subsection 4 of this section, such political subdivision may levy a tax rate for each purpose it levies taxes above the tax rate ceiling adjustment provided in paragraph (a) of this subdivision to recoup any revenues it was entitled to receive for the prior year;
(c) Provided, any adjustments in tax rates and tax rate ceilings permitted by this subdivision shall not exceed a rate limit specified in statute or the constitution or levels previously approved by voters.
5. (1) In order to implement the provisions of section 22 of article X of the Constitution of Missouri, each county assessor shall maintain a record of property valuations in such a manner as to identify each year the increase in valuation for each political subdivision in the county as a result of "new construction and improvements". In addition, the state tax commission shall certify each year to each county clerk the increase in the general price level as measured by the Consumer Price Index for All Urban Consumers for the United States, or its successor publications, as defined and officially reported by the United States Department of Labor, or its successor agency. The state tax commission shall certify the increase in such index on the latest twelve-month basis available on July first of each year over the immediately preceding prior twelve-month period in order that political subdivisions shall have this information available in setting their tax rates according to law and section22 of article X of the Constitution of Missouri. For purposes of implementing the provisions of section 22 of article X of the Missouri Constitution, the term "property", as used in that constitutional section, shall mean all taxable property, including state assessed property.
(2) Each political subdivision required to revise rates of levy by subsections 2 and 3 of this section or section 22 of article X of the Constitution of Missouri shall calculate each tax rate it is authorized to levy and, in establishing each tax rate, shall consider each provision for tax rate revision or reduction, provided in this section and section 22 of article X of the Constitution of Missouri, separately and without regard to annual tax rate reductions provided in sections67.505 and 164.013, RSMo. Each political subdivision shall set each tax rate it is authorized to levy using the calculation that produces the lowest tax rate ceiling. It is further the intent of the general assembly, under the authority of section 10(c) of article X of the Constitution of Missouri, that the provisions of this section be applicable to tax rate reductions or revisions mandated under section 22 of article X
of the Constitution of Missouri as to reestablishing tax rates as reduced or revised in subsequent years, enforcement provisions, and other provisions not in conflict with section 22 of article X
of the Constitution of Missouri; except that, in calculating tax rates in the year subsequent to a tax reduction or revision under section 22 of article X of the Constitution of Missouri, a school district may modify its tax rate ceiling in such a manner as to recapture any loss in state school aid occasioned by establishing its tax rate ceiling as required by section 22 of article X of the Constitution of Missouri. Annual tax rate reductions provided in sections 67.505 and164.013, RSMo, shall be applied to the tax rate as established under this section and section 22
of article X of the Constitution of Missouri. In the year of general reassessment, the tax rate ceiling, as calculated under this section, of each political subdivision may be increased as follows:
(a) For political subdivisions in which the voters thereof approved an increase in the rate of levy which was advertised, in writing or by publication, or both, by the political subdivision as being based on assessed valuations in the year of general reassessment, the total increase in the rate of levy so approved by the voters of such political subdivision;
(b) For political subdivisions not included in paragraph (a) of this subdivision, the tax rate ceiling of such political subdivisions shall be increased by an amount which will generate the same amount of tax revenues as the increase approved by the voters of the political subdivision would have generated if such increase had been included in the rate of levy imposed in the year prior to general reassessment.
6. (1) In all political subdivisions except school districts, the tax rate ceiling established pursuant to this section shall not be exceeded in the year of the tax rate reduction or thereafter unless a higher tax rate is approved by a vote of the people. Approval of the higher tax rate shall be by at least a majority of votes cast, except:
(a) When a higher tax rate, before reduction, would have required approval by at least two-thirds of the votes cast, any vote to exceed the tax rate ceiling shall require approval by at least two-thirds of the votes cast;
(b) When a higher tax rate, before reduction, could have been approved by a majority of the votes cast, the maximum tax rate increase that can be approved by a majority after reduction shall be computed as follows: The maximum cumulative percent the original tax rate ceiling can be increased by a majority vote in the future shall be the same percent which the tax rate prior to reduction was exceeded by the maximum tax rate that could be voted by a majority; and
(c) When a higher tax rate, before reduction, would have required approval of the governing body without approval of voters, the tax rate ceiling may be increased by action of the governing body in years following reduction, by the same percentage the rate could have been increased without approval of the voters before the tax rate was reduced. For this purpose any political subdivision that before general reassessment had eliminated its tax rate shall be deemed to have been levying one cent per one hundred dollars valuation before general reassessment.
(2) When the voters approve an increase in the tax rate, the increased tax rate becomes the new tax rate ceiling.
(3) The governing body of any political subdivision except a school district may levy a tax rate lower than its tax rate ceiling and may increase that lowered tax rate to a level not exceeding the tax rate ceiling without voter approval.
7. (1) In all school districts, tax rates reduced or revised pursuant to this section or section22 of article X of the Missouri Constitution or when a court has determined and ordered the tax rate reduction, or revision, may be increased, in increments or otherwise:
(a) Above the tax rate set as a result of such reduction or revision, up to and including the rate in effect on November 4, 1980, or up to and including a higher rate adopted after November 4, 1980, in the manner authorized by law, by the approval of a majority of the qualified voters of the school district voting on the proposition; provided that, the provisions of this subdivision shall apply only if the tax rates, after the increase, will be three dollars seventy-five cents or less;
(b) Above the rate in effect on November 4, 1980, or above a higher rate adopted after November 4, 1980, in the manner authorized by law, or above three dollars seventy-five cents, only by the approval of that majority of the qualified voters of the school district voting on the proposition as required by section 11(c) of article X of the Missouri Constitution.
(2) The governing body of any school district may levy a tax rate lower than its tax rate ceiling and may increase that lowered tax rate to a level not exceeding the tax rate ceiling, without voter approval. As used in this subdivision, the term "tax rate ceiling" shall also include any reductions mandated by section 164.013, RSMo.
8. Each taxing authority proposing to levy a tax rate in any year shall notify the clerk of the county commission in the county or counties where the tax rate applies of its tax rate ceiling and its proposed tax rate. Any taxing authority whose tax rate ceiling has changed from the previous year shall provide data, in such form as shall be prescribed by the state auditor by rule, substantiating such change complies with Missouri law. In addition, each taxing authority proposing to levy a tax rate for debt service shall provide data, in such form as shall be prescribed by the state auditor by rule, substantiating the tax rate for debt service complies with Missouri law. The county clerk shall keep on file and available for public inspection all such information for a period of three years. The clerk shall, within three days of receipt, forward a copy of the notice of a taxing authority's tax rate ceiling and proposed tax rate and any substantiating data to the state auditor. The state auditor shall examine such information and return to the county clerk his findings as to compliance of the tax rate ceiling with this section and as to compliance of any proposed tax rate for debt service with Missouri law. The county clerk shall forward a copy of the auditor's findings to the taxing authority and shall file a copy of the findings with the information received from the taxing authority. The auditor's findings are advisory for the information of the taxing authority and the public.
9. No tax rate shall be extended on the tax rolls by the county clerk unless the political subdivision has complied with the foregoing provisions of this section.
10. Whenever a taxpayer has cause to believe that a taxing authority has not complied with the provisions of this section, the taxpayer may make a formal complaint with the prosecuting attorney of the county. Where the prosecuting attorney fails to bring an action within ten days of the filing of the complaint, the taxpayer may bring a civil action under this section and institute an action as representative of a class of all taxpayers within a taxing authority if the class is so numerous that joinder of all members is impracticable, if there are questions of law or fact common to the class, if the claims or defenses of the representative parties are typical of the claims or defenses of the class, and if the representative parties will fairly and adequately protect the interests of the class. In any class action maintained under this section, the court may direct to the members of the class a notice to be published at least once each week for four consecutive weeks in a newspaper of general circulation published in the county where the civil action is commenced and in other counties within the jurisdiction of a taxing authority. The notice shall advise each member that the court will exclude him from the class if he so requests by a specified date, that the judgment, whether favorable or not, will include all members who do not request exclusion, and that any member who does not request exclusion may, if he desires, enter an appearance. In any class action brought under this section the court, in addition to the relief requested, shall assess against the taxing authority found to be in violation of this section the reasonable costs of bringing the action, including reasonable attorney's fees, provided no attorney's fees shall be awarded any attorney or association of attorneys who receive public funds from any source for their services. Any action brought pursuant to this section shall be advanced to the top of the circuit court's civil docket, and shall be set for hearing as soon as practicable after the cause is at issue.
11. If in any action, including a class action, the court issues an order requiring a taxing authority to revise and lower the tax rates as provided in this section or enjoins a taxing authority from the collection of a tax because of its failure to revise and lower the rate of levy as provided in this section, any taxpayer paying his taxes when an improper rate is applied has erroneously paid his taxes in part, whether or not the taxes are paid under protest as provided in section 139.031, RSMo. The part of the taxes paid erroneously is the difference in the amount produced by the original levy and the amount produced by the revised and lowered levy. The township or county collector of taxes or the collector of taxes in any city shall refund the amount of the tax erroneously paid. The taxing authority refusing to revise and lower the rate of levy as provided in this section shall make available to the collector all funds necessary to make refunds under this subsection. No taxpayer shall receive any interest on any money erroneously paid by him under this subsection.
(L. 1955 p. 835 § 1, A.L. 1979 S.B. 247, 333 254, A.L. 1984 H.B. 1254, A.L. 1985 S.B. 234, A.L. 1985 H.B. 463, A.L. 1985 S.B. 152, A.L. 1986 H.B. 1022, et al.)
Effective 6-20-86
* Material between asterisks was omitted from original rolls due to an apparent drafting error.