Jonathan D. EILIAN and Amanda
A. Eilian, Respondents,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 93075.

Supreme Court of Missouri,
En Banc.

June 11, 2013.

Trevor S. Bossert and Deputy Solicitor General, Jeremiah J. Morgan, Attorney General's Office, Jefferson City, for Director.

J. Kent Lowry and Scott Hunt, Armstrong Teasdale LLP, Jefferson City, for Eilians.

PAUL C. WILSON, Judge.

From time to time, the tiny two-lane gravel road of common sense intersects the superhighway of tax law. It is a dangerous crossing, to be sure, and one to be navigated with great care. Here, the common sense route was mapped out more than a generation ago in *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874 (Mo. banc 1983). Because Mr. and Mrs. Eilian have failed to persuade the Court to abandon that guide, the Court reaffirms the holding in *Brown* and concludes that it is dispositive of the legal issues in this appeal. Accordingly, the decision is reversed, and the case is remanded to the Administrative Hearing Commission for a final calculation of the taxpayers' 2006 taxes.

The Director of Revenue determined that Mr. Eilian[1] underpaid his 2006 Missouri taxes because he improperly used his federal "net operating loss" to offset income that was taxable only under Missouri law and not under federal law. Mr. Eilian filed a timely protest and brought a complaint before the Administrative Hearing Commission challenging the Director's decision and notice of deficiency. Mr. Eilian bore the burden of proof before the Commission. § 621.050.[2] He also bore the burden of demonstrating that the deduction he claimed was clearly authorized by the applicable Missouri statutes. *Brown*, 649 S.W.2d at 877. The parties submitted this case to the Commission on a stipulation of facts. The Commission ruled in Mr. Eilian's favor, and the Director appeals.

This Court has exclusive jurisdiction to review the Commission's decision because the case involves construction of state revenue laws.[3] Mo. Const. art. V, sec. 3. Ordinarily, the Commission's deci-

---

1. For ease of discussion, Mr. Eilian is referred to individually. Even though he and his wife jointly challenged the Director's determinations before the Commission and are both parties to this appeal, the issues in this case primarily involve only Mr. Eilian. The entire "net operating loss" in 2005 was his, most (but not all) of the income on the joint 2006 federal return was his, all of the proper 2006 addition and subtraction modifications to Missouri adjusted gross income were his, and all of the income reported on the 2007 return was his. On remand, however, the Commission must apply the holdings herein and properly account for each item of income for each spouse to calculate correctly their 2006 Missouri tax liability. Because neither spouse is a Missouri resident, the Commission must calculate their taxes using the ratio and procedures set forth in section 143.181, RSMo.

2. Except where otherwise noted, all references to Missouri statutes are to the versions in effect on December 31, 2006, as reported in RSMo 2000 or RSMo Supp.2007 as appropriate.

3. The Director filed this appeal in the court of appeals, which properly determined that the issues are within this Court's exclusive appellate jurisdiction and transferred the appeal here. This case involves the construction of section 143.121, which is not the statute construed in *Brown*. Accordingly, no matter how clearly applicable and compelling the reasoning and holdings of *Brown* might be (and are), article V, section 3 of the Missouri Constitution mandates that this Court construe this revenue law in the first instance.

sion will be affirmed "if (1) it is authorized by law; (2) it is supported by competent and substantial evidence on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the General Assembly." *Custom Hardware Eng'g & Consulting, Inc. v. Dir. of Revenue*, 358 S.W.3d 54, 56 (Mo. banc 2012) (citing § 621.193). In this case, however, there were no disputed facts, and the Commission's decision involves only questions of law. Therefore, this Court reviews the Commission's interpretation of revenue laws de novo. *Id.*

## I. Net Operating Losses Under Federal Law

Generally, federal tax law allows a taxpayer to offset each year's business income with the taxpayer's "ordinary and necessary" business expenses incurred during the same period. This deduction for business expenses is a fundamental aspect of federal tax policy because it recognizes that only "net" income (rather than "gross" income) is subject to tax. Therefore, every taxpayer should be able to receive—at least in theory—the full tax benefit of this deduction for all expenses incurred.

Life, however, is not a theory. Taxpayers do not go about their business in neat, 365–day chapters, nor did they always incur business expenses in perfect annual sync with their income. For some taxpayers, annual income reliably exceeds deductible expenses. For others, expense deductions in a given year may exceed—even greatly exceed—that year's income. Once that year's income is reduced to zero, however, these latter taxpayers are at risk of receiving no tax benefit from their remaining deductible expenses.

Accordingly, Section 172 of the Internal Revenue Code, 26 U.S.C. § 172 ("I.R.C. § 172"), was enacted to mitigate the consequences when a taxpayer's income and expenses are not perfectly aligned.

> Those provisions [in § 172] were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year.

*Libson Shops, Inc. v. Koehler*, 353 U.S. 382, 386, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957).

Under I.R.C. § 172(c), a taxpayer incurs a "net operating loss" (NOL) when its deductible expenses exceed its federal taxable income in a given year, and the year in which this occurs is referred to as the "loss year." Under I.R.C. § 172(a), there is no NOL deduction (nor any need for it) in the loss year because—by definition—all of the taxpayer's federal taxable income is offset by the ordinary expense deduction. But instead of the taxpayer simply losing the benefit of the "unused" expense deductions (i.e., the amount remaining after all of the taxpayer's income has been offset), I.R.C. § 172 allows the taxpayer to apply these "unused" deductions—called the NOL—to the taxpayer's federal taxable income in other years.

This does not mean that the taxpayer is free to choose when to apply the NOL or in what amount. Instead, under I.R.C. § 172(b)(2), the entire amount of the NOL must be used to offset federal taxable income in the "earliest of the taxable years" to which it applies.[4] As a practical matter,

---

**4.** For most NOLs, the "earliest of the taxable years" to which the loss applies is the second year prior to the loss year. I.R.C. § 172(b)(1)(A). For certain types of losses,

however, the amount of the NOL deduction is limited to the amount required to reduce the taxpayer's taxable income for that year (calculated without reference to the NOL or the taxpayer's personal exemption) to zero. *Id.* ("taxable income so computed shall not be considered to be less than zero"). The unused balance of the NOL is to be carried forward and used to offset the taxpayer's federal taxable income in the succeeding year. *Id.* This continues until the taxpayer has used received federal tax benefits equal to the original amount of the NOL.

## II. Mr. Eilian's NOL

In 2005, Mr. Eilian incurred a net operating loss in the amount of $34,535,832. Because he elected to waive the two-year carryback provision, I.R.C. § 172 required Mr. Eilian to use this NOL to offset his federal taxable income beginning in 2006, i.e., the year after his loss year. Leaving aside the personal exemption, Mr. Eilian's federal taxable income in 2006 was $28,418,457, which was less than the original amount of his NOL. Accordingly, under I.R.C. § 172(b)(2), Mr. Eilian was required to use that much of his NOL to reduce his 2006 federal taxable income to zero and then use the remaining balance of the NOL (i.e., $6,117,375) to offset his federal taxable income in 2007. Mr. Eilian's NOL deductions in 2006 and 2007 equaled $34,535,832, which was the original amount of the NOL. Accordingly, Mr. Eilian received from his NOL 100 percent of the federal tax benefits that I.R.C. § 172 was intended to produce.

Because the starting point for Mr. Eilian's Missouri tax returns under section 143.121.1 is his federal "adjusted gross income," that starting point necessarily reflects the $28,418,457 and $6,117,375 reductions in his federal taxable income in 2006 and 2007, respectively. Therefore, Mr. Eilian not only received the full federal tax benefit from his NOL by deducting a combined $34,535,832 from his income on his 2006 and 2007 federal returns, he also received $34,535,832 in Missouri tax benefits because those same federal income offsets were reflected in Mr. Eilian's starting points for his 2006 and 2007 Missouri returns.

If Mr. Eilian had stopped there, the Director would have had no grounds for complaint. Instead, Mr. Eilian sought to reap additional Missouri tax benefits by using the NOL to offset income that was taxable under Missouri law but not taxable under federal law.

As noted above, the starting point for Mr. Eilian's Missouri tax returns is his federal adjusted gross income. However, section 143.121 requires that certain modifications be made to this starting point. On his 2006 Missouri return, section 143.121.2 required Mr. Eilian to add $893,840 to reflect the interest he earned from certain (non-Missouri) state and local obligations that is taxed under Missouri law but not under federal law. Under section 143.121.3, Mr. Eilian also was required to subtract $2,329 to reflect the interest he earned on federal obligations that is taxed under federal law but not under Missouri law. As such, Mr. Eilian's Missouri adjusted gross income should have reflected $891,511 in net income that is taxable under Missouri law but not under federal law. Such income is referred to here as "Missouri-taxable income." After subtracting Missouri exemptions and

---

however, this "carryback" period is extended to the third, fourth or fifth year prior to the loss year. *See, e.g.*, I.R.C. § 172(b)(1)(F) and (G). In any event, the taxpayer may elect to waive the applicable "carryback" period. I.R.C. § 172(b)(3). If so, the NOL must be applied to the taxpayer's income in the year following the loss year. I.R.C. § 172(b)(2).

deductions in the amount of $119,128, the total taxable income on Mr. Eilian's Missouri return was $772,383, all of which was Missouri-taxable income.

Unwilling to calculate his Missouri taxes on this basis, however, Mr. Eilian attempted to use his NOL to offset all of his Missouri-taxable income. The Director concluded that this would violate the rule announced in *Brown*. The Commission disagreed with the Director and decided in favor of Mr. Eilian. For the reasons set forth below, this Court reaffirms *Brown* and, on that basis, reverses the Commission's decision.

### III. The *Brown* Decision

In *Brown*, a corporate taxpayer incurred a $5–million NOL in 1975 and chose not to waive the applicable three-year carryback provision. *Brown*, 649 S.W.2d at 877. Therefore, under I.R.C. § 172, the taxpayer was required to use the NOL to offset its federal taxable income beginning in 1972. Because that income exceeded the amount of the NOL, the taxpayer had no remaining balance to use in later years. Accordingly, the taxpayer in *Brown* received 100 percent of the federal tax benefits of this NOL in the form of a $5–million reduction in its 1972 federal taxable income. *Id.*

Even though the taxpayer in *Brown* received $5 million in federal tax benefits on its 1972 federal return, it received no Mis-souri tax benefit in 1972 or any other year. In 1972, Missouri taxpayers used a "standalone" approach to calculate Missouri taxes rather than a "coupled" system in which the starting points for Missouri returns are set by reference to the taxpayers' federal returns.[5] *Id.* Therefore, even though the taxpayer in *Brown* was able to use the NOL to reduce its 1972 federal taxable income by $5 million, this reduction had no effect on the taxpayer's 1972 Missouri taxes. Unsatisfied with this result, this taxpayer sought to use the NOL to offset certain Missouri-taxable income (i.e., income taxable under Missouri law but not under federal law) on its 1975 Missouri return. *Id.* at 876–77.

As noted in footnote 5, by 1975 Missouri had abandoned its "standalone" approach. Instead, under section 143.431.1, the starting point for a corporation's Missouri return was its federal "taxable income." Because 1975 was the loss year for the taxpayer in *Brown*, its federal return showed "taxable income" of negative $5,000,532 and the taxpayer used this negative figure as the starting point on its Missouri return. *Id.* at 876. When, pursuant to section 143.431.2, the taxpayer added its 1975 Missouri-taxable income to this starting point, it was subsumed in the $5–million loss. Accordingly, the taxpayer thereby avoided having to pay Missouri taxes on its Missouri-taxable income for

5. In 1972, Missouri law was changed to "couple" Missouri tax law to federal law by using the income from the taxpayer's federal tax return (and all that goes into it, including the use of an NOL to offset such income pursuant to I.R.C. § 172) as the starting point for the taxpayer's Missouri tax return. *See* §§ 143.121.1 and 143.431.1 (setting federal "adjusted gross income" and "taxable income" as the starting points for Missouri returns by individuals and corporations, respectively). However, Missouri's changeover from "standalone" to "coupled" did not take effect until after the 1972 tax year. Nevertheless, the effect of this change on the Missouri tax benefits from using an NOL to offset federal income (i.e., no such benefits under the "standalone" approach, but a dollar-for-dollar benefit under the "coupled" approach) was clear by the time the taxpayer in *Brown* chose to use the carryback provision to offset its income in 1972 (a "standalone" year) rather than waive that provision so that the NOL would be applied to its income in 1975 (a "coupled" year).

1975. Thus, not only was the taxpayer in *Brown* able to use the full amount of the NOL to offset $5 million of federal income on its 1972 taxes, but it also sought to offset up to another $5 million of Missouri-taxable income on its 1975 taxes. The Director ruled that the taxpayer could not use its federal loss as the starting point on its Missouri returns, and the Commission upheld the Director's position.

On appeal, the taxpayer argued that I.R.C. § 63(a) (1954) defines federal taxable income and does not prohibit negative results, particularly when the taxpayer has an operating loss or an NOL deduction. Therefore, the taxpayer concluded that section 143.431.1 must be interpreted to allow taxpayers to use a negative income amount as the starting point for Missouri returns. *Id.*

The Court rejected the taxpayer's construction of section 143.431.1 because it depended on reading I.R.C. § 63(a) in isolation from the remainder of federal tax law. Instead, the Court held that the Internal Revenue Code must be read "as an entirety with the purpose of giving as full meaning to all expressions therein as harmony will allow." *Id.* at 877. The Court noted that, "while negative taxable income may exist in a technical sense, *it is actually a net operating loss.*" *Id.* at 876 (emphasis added). Therefore, when section 143.431.1 set federal taxable income as the starting point for the taxpayer's 1975 Missouri return, this reference to "income" never was intended to include—and did not countenance—a taxpayer using a federal loss for this purpose. *Id.* at 877.

The Court explained that "[t]his interpretation comports with the practical connotation of taxable income as *'income which may be taxed* after all exemptions and deductions have been allowed from the total income.'" *Id.* at 876 (quoting *State ex rel. Buder v. Hackmann*, 305 Mo. 342, 265 S.W. 532, 535 (1924)). Because a loss is not something that "may be taxed," the Court held that section 143.431.1 did not intend for a taxpayer to be able to use a loss (i.e., negative income) as the starting point for its Missouri return. *Id.* at 877.

Having concluded that a negative federal income amount was, in practical effect, the same as a federal loss, the Court noted that the federal tax benefits of such losses are governed solely by I.R.C. § 172. *Id.* at 876–77. Accordingly, in the absence of any specific Missouri statute to the contrary, the Missouri tax benefits from an NOL also must be limited to those that result from the federal offsets authorized by I.R.C. § 172:

> When a taxpayer incurs a federal loss *its sole recourse is to § 172.* That is the only reasonable consequence of construing § 63 in harmony with § 172. Any other holding would *subject a single loss to multiple use in Missouri without the requisite statutory authority.*

*Brown*, 649 S.W.2d at 877 (emphasis added).

The Court based its holding on the general principal that "[d]eductions depend upon legislative grace and are *allowable only to the extent authorized by statute.*" *Id.* (emphasis added). Therefore, regardless of the federal tax benefits of an NOL, the taxpayer is not entitled to any Missouri tax benefit resulting from that loss unless authority for such a benefit "clearly appear[s]" in Missouri law. *Id.* There was no such clear authority in Missouri law in 1972 under the "standalone" approach and, therefore, no Missouri tax benefit was allowed. In 1975, however, there was clear authority for the taxpayer to receive Missouri tax benefits from an NOL because the new "coupled" approach designated a starting point for the taxpayer's Missouri return that necessarily would reflect the

deductions in federal income required by I.R.C. § 172. Therefore, section 143.431.1 authorized Missouri tax benefits that flowed directly from incorporating these federal deductions into the taxpayer's Missouri return, but it did not authorize any Missouri tax benefits beyond those resulting directly from the application of I.R.C. § 172.

■ Accordingly, *Brown* held that a taxpayer could receive a Missouri tax benefit from a federal NOL if—and only to the extent that—the NOL resulted in a reduction in federal taxable income under I.R.C. § 172 *and* Missouri law plainly authorized such a reduction to be reflected in the starting point for the taxpayer's Missouri return.

> This statutory scheme permits a taxpayer to receive a Missouri benefit from the federal tax net operating loss provisions. Therefore, if a taxpayer were allowed to include a negative amount on line 1 of the Missouri return *the result would be multiple benefits arising from a single loss.* For example, the loss would *offset positive modifications* prescribed by § 143.431.2 for the computation of Missouri taxable income and still be available to reduce federal taxable income in prior years.

*Id.* at 876–77 (emphasis added).

Because nothing in I.R.C. § 172 authorized the taxpayer to use its NOL to offset Missouri-taxable income, and because section 143.431.1 did not clearly authorize the taxpayer to circumvent § 172 simply by treating the loss as negative income and using it as the starting point for its Missouri return, *Brown* held that the taxpayer was liable for the Missouri taxes relating to the taxpayer's Missouri-taxable income. *Id.* at 877.

## IV. *Brown* is Still Good Law and Governs This Case

In the present case, Mr. Eilian's NOL resulted in more than $34.5 million in Missouri tax benefits precisely in the manner approved in *Brown.* In addition, Mr. Eilian sought to use the negative income figure from his 2006 federal return created by this NOL to offset his 2006 Missouri-taxable income. This is precisely the use that was prohibited in *Brown.* Therefore, unless Mr. Eilian can show that *Brown* should not be followed in his case, or that *Brown* is no longer good law and should not be followed in any case, the Commission's decision must be reversed and the case remanded so that the Commission can recalculate Mr. Eilian's 2006 Missouri taxes.

First, Mr. Eilian contends that "the true holding of *Brown,* with very limited applicability, was that the amount entered into line one of the Missouri corporate tax return, the taxpayer's Federal taxable income, could not be less than zero." Mr. Eilian argues that this holding in *Brown* has no application to an individual taxpayer and that *Brown* is irrelevant for purposes of construing the phrase "federal adjusted gross income" in section 143.121.1 that designates this as the starting point for an individual's Missouri return. Mr. Eilian offers no basis for such a restricted reading of *Brown,* nor does he offer any persuasive reason why the difference between individual and corporate taxpayers is an adequate basis upon which to distinguish *Brown.*

As explained above, *Brown* provides a bright-line, common sense rule that harmonizes the applicable provisions of the Internal Revenue Code and Missouri tax law. The Court was unwilling to accept the taxpayer's myopic, technical reading of a federal tax law definition when the same term was used in Missouri tax law for different purposes. Even though I.R.C. § 63(a) permits a taxpayer's "federal taxable income" to be a negative amount for

federal purposes, *Brown* held that the purpose of section 143.431.1 would be served only if the word "income" were construed to mean amounts equal to or greater than zero, i.e., "income that may be taxed." *Brown*, 649 S.W.2d at 876. Otherwise, a taxpayer could incorporate a federal loss into its Missouri return by using a negative income amount as its starting point and thereby use a federal NOL to offset Missouri-taxable income. Nothing in I.R.C. § 172 or Missouri tax law suggests, let alone expressly authorizes, such a result.

These same considerations apply when construing section 143.121.1. There is no justification for construing the word "income" in section 143.431.1 one way in *Brown*, only to reach a different construction of the *same word* used in the *same context* in section 143.121.1. In both statutes, the purpose is to begin the taxpayer's Missouri return with an amount of federal income "that may be taxed." In neither statute is there any indication that a taxpayer's operating losses (i.e., negative income) can be used or that the purpose of designating these specific starting points [6] is to provide a means for the taxpayer to reap a Missouri tax benefit anytime the NOL results in a negative income amount on the taxpayer's federal return.

More importantly, Mr. Eilian's argument ignores the broader holding in *Brown*. As noted above, *Brown's* prohibition against a taxpayer using a negative income amount was the result of this Court's principal holding that, for purposes of determining the Missouri tax benefits of an NOL, the taxpayer's *sole recourse* is to I.R.C. § 172, and § 172 does not allow a taxpayer to use an NOL to offset Missouri-taxable income. Nothing in § 172 distinguishes between individuals and corporations, nor is there any reason to allow an individual to make such an unauthorized use of an NOL while prohibiting a corporation from doing the same. This is especially true given that, in *Brown*, this prohibition meant the taxpayer received no Missouri tax benefit from its NOL, while this prohibition still leaves Mr. Eilian with more than $34.5 million in Missouri tax benefits.

Mr. Eilian's second argument to avoid the holdings in *Brown* is that *Brown* was abrogated by a subsequent legislative amendment to section 143.431. Even if the holding in *Brown* extends to individuals (and section 143.121.1), Mr. Eilian contends that *Brown* is no longer good law and cannot be applied in any context.

The amendment on which Mr. Eilian relies added two new subsections to section 143.431:

4. If a net operating loss deduction is allowed for the taxable year, there shall be added to federal taxable income the amount of the net operating loss modification for each loss year as to which a portion of the net operating loss deduction is attributable. As used in this subsection, the following terms mean: (1) "Loss year", the taxable year in which there occurs a federal net operating loss that is carried back or carried forward in whole or in part to another taxable year; (2) "Net addition modification", for any taxable year, the amount by which the sum of all required additions to federal taxable income provided

---

6. The evident intent behind designating different starting points for corporate and individual taxpayers is that the use of "taxable income" under section 143.431.1 incorporates the use of federal deductions and exemptions into the starting point for a corporation's Missouri return, while the use of "adjusted gross income" under section 143.121.1 circumvents federal deductions and exemptions so that Missouri deductions and exemptions can be used when calculating an individual's Missouri taxes.

in this chapter, except for the net operating loss modification, exceeds the combined sum of the amount of all required subtractions from federal taxable income provided in this chapter; (3) "Net operating loss deduction", a net operating loss deduction allowed for federal income tax purposes under Section 172 of the Internal Revenue Code of 1986, as amended, or a net operating loss deduction allowed for Missouri income tax purposes under paragraph (d) of subsection 2 of section 143.121, but not including any net operating loss deduction that is allowed for federal income tax purposes but disallowed for Missouri income tax purposes under paragraph (d) of subsection 2 of section 143.121; (4) "Net operating loss modification", an amount equal to the lesser of the amount of the net operating loss deduction attributable to that loss year or the amount by which the total net operating loss in the loss year is less than the sum of: (a) The net addition modification for that loss year; and (b) The cumulative net operating loss deductions attributable to that loss year allowed for the taxable year and all prior taxable years.

5. For all tax years ending on or after July 1, 2002, federal taxable income may be a positive or negative amount. Subsection 4 of this section shall be effective for all tax years with a net operating loss deduction attributable to a loss year ending on or after July 1, 2002, and the net operating loss modification shall only apply to loss years ending on or after July 1, 2002.

§ 143.431.4 and .5, RSMo Supp.2012.

Specifically, Mr. Eilian argues that *Brown* was overruled by the language in section 143.431.5, which provides that "federal taxable income may be a positive or negative amount." Proceeding again on the faulty premise that the only holding in *Brown* was to prohibit a corporation from using a negative income amount as the starting point for its Missouri return, Mr. Eilian contends that the language added to section 143.431.5 abrogated *Brown*.

■ The question of whether subsequent legislation abrogates an earlier opinion of this Court requires examining both the intent of the statute and the effect of its language. Here, nothing in the two subsections added to section 143.431 purports expressly to overrule *Brown*. More importantly, these subsections were not added until 2004, more than 20 years after *Brown* was decided. Thus, for more than a generation, *Brown* was a settled interpretation of Missouri law and an unquestioned guide for both taxpayers and the Director. Such a long delay between this Court's decision and the subsequent enactment weighs heavily against Mr. Eilian's argument that the 2004 amendment was intended to abrogate the bright-line, common sense holding in *Brown*.

Even if the 2004 amendment was not intended to abrogate *Brown,* if the substance of the new provisions contradicts that decision, then *Brown* no longer is good law.[7] The 2004 amendment does not

7. Even if the addition of section 143.431.5 did abrogate *Brown*, the Court still could apply the reasoning of *Brown* to reach the same outcome in Mr. Eilian's case. As he points out, this case involves section 143.121, not section 143.431. The addition of section 143.431.5 has no effect on whether section 143.121.1 should be construed to allow Mr. Eilian to use the negative income amount created by his NOL on his 2006 federal return to offset his 2006 Missouri-only income. Whatever the effect of the language in section 143.431.5, the 2004 amendment stops far short of the clear and unequivocal repudiation of the reasoning in *Brown* that might persuade the Court not to reach the same result under a different—but plainly related—statute. The Court need not do so, however,

contradict the holdings in *Brown*, however, and nothing in the two new subsections authorizes a taxpayer to use a federal NOL to offset Missouri-taxable income. Indeed, not only does the 2004 amendment not contradict *Brown* by allowing the taxpayer to reap more Missouri tax benefits than *Brown* allows, the evident purpose of the 2004 amendment was to restrict—or even eliminate—the Missouri tax benefits resulting from certain uses of a federal NOL.[8]

Seizing upon a single sentence in section 143.431.5, Mr. Eilian focuses solely on the prohibition in *Brown* against using a negative income amount as the starting point for a Missouri return. When *Brown* was decided, Missouri tax law had no explicit references to the uses of an NOL or the Missouri tax benefits that can be derived from them. However, under the new section 143.431.4, the impact of an NOL on a Missouri corporate taxpayer's return now is governed by the amount of the NOL deduction. Because I.R.C. § 172(b)(2) prohibits a taxpayer from using an NOL deduction to reduce taxable federal income below zero, the calculation required by section 143.431.4 cannot be less than zero. The prohibition in *Brown* against using a negative taxable income is no longer necessary for corporate taxpayers applying section 143.431.5. And, even if a corporate taxpayer still could attempt to use its NOL to create a negative starting point for its Missouri return (and thereby offset Missouri-taxable income), *Brown* still prevents

such an end-run around I.R.C. § 172. Nothing in section 143.431.5 provides the clear authority for such a use.

Therefore, *Brown* is still good law. Both corporations and individuals must look solely to I.R.C. § 172 for any Missouri tax benefits from a federal loss. Neither corporations nor individuals are authorized by § 172 to use an NOL to offset Missouri-taxable income. And both corporations and individuals are prohibited from circumventing § 172 by using the negative income amount that results from a federal NOL as the starting point for their Missouri returns and thereby offsetting Missouri-taxable income. Accordingly, when section 143.121.1 is construed properly in accordance with *Brown*, Mr. Eilian's 2006 Missouri return failed to comply with that provision, and the Commission's decision must be reversed.

## V. Issues for Remand

For the reasons set forth above, the Court reaffirms the holdings in *Brown* and, on that basis, reverses the Commission's decision and remands the case to the Commission to recalculate Mr. and Mrs. Eilian's Missouri tax liability for 2006 in accordance with this opinion. However, several issues that were argued before the Commission and on appeal must be addressed to avoid confusion or unnecessary litigation on remand.

### A. Itemized Deductions

A comprehensive exegesis of sections 143.431.4 and .5 is not necessary to respond to Mr. Eilian's abrogation argument. Instead, it is sufficient simply to note to that the effect of the 2004 amendment—like the amendment to section 143.121 discussed below—was to restrict any Missouri tax benefits when a taxpayer elects to carry an NOL back more than the two-year carryback period applicable to most NOL's.

---

because the substance of the 2004 amendment does not contradict—and, therefore, did not abrogate—*Brown*.

8. At the time *Brown* was decided (and for two decades thereafter), the effect of a Missouri taxpayer's NOL on its Missouri taxes was controlled entirely by federal law. Beginning in 2002, however, several amendments were enacted to "decouple" Missouri law from federal law in this regard, at least regarding the "carryback" or retrospective use of an NOL.

■ The Director contends that Mr. Eilian received a "double benefit" from his 2006 itemized federal deductions that totaled $123,539. According to the Director, Mr. Eilian first received the benefit of these deductions because they reduced the amount of Mr. Eilian's NOL that he was required to use under I.R.C. § 172 to reduce his 2006 federal taxable income to zero. In addition, the Director argues that Mr. Eilian benefited further from these itemized deductions because they were incorporated into his 2006 Missouri itemized deductions. Finally, the Director argues that Mr. Eilian received a further benefit from these deductions in 2007 on both his Missouri and federal returns because the amount of his NOL that was available to offset federal taxable income in 2007 was $123,539 higher than it would have been if Mr. Eilian had not been allowed to use his itemized deductions to reduce his 2006 federal taxable income and thereby reduce the amount of the NOL required to be used in 2006 to reduce his remaining 2006 federal taxable income to zero.

Assuming that the foregoing constitutes a multiple benefit—a conclusion that the Court does not reach but accepts only *arguendo*—Missouri statutes plainly authorize this result. As the Director suggests, Mr. Eilian's 2007 taxable income on both his federal and Missouri returns would have been $123,539 higher if he had not been able to reduce his 2006 federal income by that amount and thereby avoided the need to use that much more of his NOL to "zero out" his 2006 federal income. However, this is the inescapable result of the plain language of I.R.C. § 172(b)(2), which limits the maximum amount of an NOL that can be deducted in a given year to the taxpayer's federal taxable income excluding the federal personal exemption (*see* I.R.C. § 172(d)(3)) and the NOL deduction itself (*see* I.R.C. § 172(b)(2)(B)). By expressly excluding from this equation

the personal exemption but not itemized deductions, the clear intent of I.R.C. § 172(b)(2) is to give the taxpayer the benefit of itemized deductions when calculating the amount of the NOL needed to reduce that year's federal taxable income to zero (and, therefore, increase the amount of the NOL to be carried forward to the next year).

Missouri law is equally clear. Under sections 143.111 and 143.141, Mr. Eilian is allowed to reduce his Missouri adjusted gross income by the amount of his itemized federal deductions (with certain increases and decreases required by Missouri law). Accordingly, Mr. Eilian has met his burden of demonstrating that this deduction clearly is authorized by Missouri law, *State ex rel. Conservation Commission v. LePage*, 566 S.W.2d 208, 211 (Mo. banc 1978), and nothing in *Brown* requires a contrary result.

## B. Mr. Eilian's 2007 Missouri Return

Mr. Eilian suggests that, at most, the Director could have challenged Mr. Eilian's 2007 Missouri return but not his 2006 return. Mr. Eilian argues that even if he received an improper "multiple benefit," such a benefit—by definition—had to occur on his 2007 return because no matter how his 2006 tax benefits are calculated, the Director cannot dispute that those benefits are less than the original amount of Mr. Eilian's NOL. Therefore, Mr. Eilian contends that the Director's challenge to the 2006 return (which is all that was before the Commission and is before this Court) should be rejected and the Commission's decision affirmed.

This argument fails because it ignores the central holding of *Brown* as applied to this case. *Brown* holds that a taxpayer's sole recourse with respect to an NOL is to I.R.C. § 172, and nothing in § 172 or Missouri law permits a taxpayer to use a

federal NOL to offset Missouri-taxable income. The taxpayer in *Brown* was not permitted to do so, and to allow Mr. Eilian to do so here "would subject a single loss to multiple use in Missouri without the requisite statutory authority." *Brown,* 649 S.W.2d at 877.

But the gravamen of *Brown* was not prohibiting "multiple benefits." In fact, the taxpayer in *Brown* received no Missouri tax benefit at all, let alone a double benefit. Instead, the bright-line, common sense rule announced in *Brown* (and applied here) is that a taxpayer may not receive any Missouri tax benefit from a federal NOL that is not authorized both by I.R.C. § 172 and Missouri law. In *Brown,* it was necessary to prohibit the taxpayer from relying upon a negative federal income amount created by an NOL as the starting point for its Missouri return in order to offset Missouri-taxable income. So it is here. Mr. Eilian's 2006 return violated this rule, regardless of what he did or did not do on his 2007 return. Accordingly, the Director properly challenged Mr. Eilian's 2006 return and was not limited to challenging his 2007 return.

### C. Application of Section 143.121.2(4)

In reviewing the record in this case, it appears that Mr. Eilian, the Director and the Commission each misunderstood and misapplied section 143.121.2(4) at different times and to different degrees throughout this litigation. Some of this confusion may have been the result of uncertainty about whether *Brown* applied to this case, but this does not appear to account for all of the confusion. Therefore, to avoid any recurrence on remand, the proper construction and application of section 143.121.2(4) will be addressed here.

As noted above, section 143.121.1 provides that the starting point for an individual's Missouri tax return is the taxpayer's federal adjusted gross income. The tax-

payer's Missouri adjusted gross income then is calculated by adding certain amounts that section 143.121.2 makes taxable under Missouri law even though they are not taxable under federal law and by subtracting certain amounts specified in section 143.121.3, including interest on federal bonds that is taxable under federal law but not under Missouri law.

As a result of his NOL, Mr. Eilian's federal adjusted gross income in 2006 was a negative amount, and he used this negative income—improperly—as the starting point for his 2006 Missouri return. To this starting point, Mr. Eilian not only added $893,840 of Missouri-taxable income as required by section 143.121.2(2), he also added the full amount of his NOL (i.e., $34,535,832) in the mistaken belief that this addition was required by section 143.121.2(4). Then, Mr. Eilian not only subtracted the $2,329 in federal interest that is excluded from Missouri taxes under section 143.121.3(1), he also subtracted the full amount of his NOL (i.e., $34,535,832).

The Director insists that there is no statutory basis (or other justification) for Mr. Eilian's $34.5–million subtraction and that the $34.5–million addition modification made by Mr. Eilian was too large. Instead, the Director argues that section 143.121.2(4) requires Mr. Eilian to add back to his 2006 income only the amount of the NOL that he will carry forward to 2007 (i.e., $6,117,375).

The Commission rejected both of these interpretations and decided instead that section 143.121.2(4) does not require Mr. Eilian to make any additions or subtractions to his 2006 Missouri return regarding his NOL. However, the Commission stated that section 143.121.2(4) required Mr. Eilian to add (and apparently be taxed on) the entire $34.5 million of his NOL to his ***2005 return.***

All three interpretations are incorrect. Section 143.121.2(4) is a complex statute and, to understand its impact (if any) on Mr. Eilian's Missouri returns, section 143.121.2(4) must be read carefully and in light of the cumulative effects of the amendments enacted in 2002 and 2003. As noted above, at the time *Brown* was decided and for nearly 20 years thereafter, nothing in Missouri law explicitly addressed the Missouri tax benefits that a taxpayer could receive as a result of a federal NOL. After Missouri changed to a "coupled" approach, sections 143.121 and 143.431 authorized Missouri tax benefits anytime a taxpayer used an NOL pursuant to I.R.C. § 172 to reduce its federal income down to—but not below—zero. Thus, a Missouri taxpayer received Missouri tax benefits equal to such deductions because they were reflected in the taxpayer's starting point on its Missouri returns.

Beginning in 2002, however, several changes in Missouri law were made to "uncouple" Missouri law from federal law in this regard.[9] For example, the following language was added to section 143.121.2 in 2002:

2. There shall be added to [the taxpayer's] federal adjusted gross income:

(d) The amount of any deduction that is included in the computation of federal taxable income for net operating loss allowed by Section 172 of the Internal Revenue Code of 1986, as amended, except for any deduction for net operating loss the taxpayer claims in the tax year in which the net operating loss occurred or carries forward for a period not to ex-

ceed twenty years and carries backward for not more than two years. § 143.121.2(d), RSMo Supp.2002.

Under this 2002 amendment, a taxpayer was required to modify its Missouri income by adding back the amount deducted from the taxpayer's federal income pursuant to I.R.C. § 172 in a given year *unless* the NOL deduction is taken in the loss year (which I.R.C. § 172 does not allow) or in any other year between the second year prior to the loss year and 20th year following the loss year. In other words, if a particular NOL qualified for an extraordinary carryback provision (three years or longer) *and* the taxpayer used that provision to offset federal taxable income in the third year before the loss year (or before), the 2002 amendment to section 143.121.2(d) deprived the taxpayer of any Missouri tax benefit from that deduction by requiring the taxpayer to add the amount of the deduction to the taxpayer's starting point for its Missouri return under section 143.121.2(d).

In 2003, section 143.121.2(d) was amended again. This amendment provides:

(d) The amount of any deduction that is included in the computation of federal taxable income for net operating loss allowed by Section 172 of the Internal Revenue Code of 1986, as amended, [except for any deduction] **other than the deduction allowed by Section 172(b)(1)(G) and Section 172(i) of the Internal Revenue Code of 1986, as amended,** for a net operating loss the taxpayer claims in the tax year in which the net operating loss occurred or carries forward for a period [not to exceed]

9. In 2002, Congress passed the Job Creation and Worker Assistance Act of 2002, P.L. 107–147, which gave taxpayers the option of a five-year carryback provision for any NOL incurred in 2001 or 2002. *Id.* at § 102. Thus, in addition to facing revenue shortfalls of their own in 2002, states like Missouri that utilized "coupled" income tax approaches also were suddenly faced with the prospect of needing to pay income tax refunds stretching back as far as 1996.

of more than twenty years and carries backward for [not] more than two years. **Any amount of net operating loss taken against federal income taxes but disallowed against Missouri income taxes pursuant to this paragraph since July 1, 2002, may be carried forward and taken against any loss on the Missouri income tax return for a period of not more than twenty years from the year of the initial loss.**

§ 143.121.2(d), RSMo Supp.2003 (brackets indicate deletions from, and bold indicates additions to, the 2002 version of this provision).[10]

As the plain language of this provision shows, the 2003 amendment reversed the grammatical approach of the first sentence but not its meaning. This sentence now states affirmatively that the taxpayer must add back the full amount of any NOL deduction that is: (i) taken in the loss year, (ii) carried back more than two years, or (iii) carried forward more than 20 years. Because I.R.C. § 172 does not permit the taxpayer (and the taxpayer does not need) to take an NOL deduction in the loss year, the effect of this first sentence is the same as it was before the 2003 amendment, except that it now excludes NOL deductions for farm losses (i.e., I.R.C. sections 172(b)(1)(G) and 172(i)).

Under I.R.C. § 172(b)(1)(G) and § 172(i), individuals incurring an NOL from farm losses may utilize a five-year carryback provision. For example, a farmer incurring such a loss in 2002 could use the NOL to offset federal income on his 1997 federal return. Under the 2002 amendment to section 143.121.2, however, if this farmer elected to use this five-year carryback to offset his 1997 federal income, the farmer would receive no corresponding reduction on his 1997 Missouri tax return. Even though the 1997 reduction in federal income was automatically reflected in the farmer's starting point for his 1997 Missouri return, the farmer was required to add this income back for purposes of calculating his Missouri taxes under the 2002 version of section 143.121.2(4). But under the 2003 amendment, the farmer is not required to add this income back to his 1997 Missouri return and is entitled to receive whatever Missouri tax benefits flow from the reductions to his 1997 federal income just as though the 2002 amendment had not been enacted.

■ In addition to excluding farm loss NOLs from the reach of the 2002 amendment, the 2003 amendment also lessens the impact of the 2002 amendment for those who incur an NOL that was not based on farm losses. Under the 2002 amendment, any taxpayer using an NOL to offset federal income more than two years before the loss year received no Missouri tax benefit from that reduction. The addition of the last sentence to section 143.121.2(4) in the 2003 amendment mitigates this result by allowing the Missouri taxpayer to recapture those lost tax benefits in the first year following the loss year (and for up to 20 years thereafter). Thus, even though a Missouri taxpayer still cannot reap any Missouri tax benefits from an NOL more than two years prior to the loss year, the 2003 amendment to section 143.121.2(4) allows the taxpayer to receive federal tax benefits from the full extent of the carryback provision without forfeiting the Missouri tax benefits altogether.

Accordingly, when read carefully and in the context of its development, it is clear that nothing in section 143.121.2(4) requires Mr. Eilian to add (or subtract) any

---

**10.** The provisions in section 143.121.2(d) as enacted in 2002 and 2003 are now incorporated in section 143.121.2(4), RSMo Supp. 2012.

amount to his Missouri returns for 2005, 2006 or 2007 as a result of his NOL.[11]

## VI. Conclusion

For the foregoing reasons, the decision of the Commission is reversed, and the case is remanded for the limited purpose of having the Commission perform a final calculation of Mr. and Mrs. Eilian's 2006 Missouri taxes in accordance with this opinion.

All concur.

11. Neither Mr. Eilian nor the Director mentions 12 C.S.R. § 10–2.165 (application of NOL to Missouri corporate tax returns) or 12 C.S.R. § 10–2.710 (application of NOL to Missouri individual returns). Accordingly, the Court has not included either rule in this analysis, except to note that neither appears to have been amended to reflect the 2002 and 2003 amendments to section 143.121 or the 2004 amendment to section 143.431.